21-2-00730-34
CMP                2
Complaint
10179484

6D

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
04/26/2021 10:39:01 AM
Linda Myhre Enlow
Thurston County Clerk

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
COUNTY OF THURSTON

EDDIE LEE LEMMON, individually and on
behalf of all others similarly situated,

                Plaintiff,

    v.

PIERCE COUNTY, a Washington municipality,

                Defendant.

NO. 21-2-00730-34

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

I. INTRODUCTION

1.      Pierce County has a policy, practice, and custom of automatically imposing

additional fines and fees when referring court debt to private collection agencies. This conduct

violates the constitutional rights of those who owe legal financial obligations (LFOs), especially

those who are too poor to pay.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

2.      The district and superior courts of Pierce County impose LFOs as part of sentencing in misdemeanor and felony cases. County officials—specifically, the Pierce County Court Clerk and District Court Administrator—are then responsible for collecting the debt.

3.      When a person fails to pay their LFOs, the Pierce County clerk or administrator sends the account to a private collection agency. When Pierce County sends the account, a collection fee is automatically assessed, which for district court LFOs is approximately 18 percent and for superior court LFOs is 23 percent. This collection fee then becomes part of the LFOs. Pierce County can also begin charging interest on the LFOs at a rate of 12 percent per annum on restitution. RCW 3.62.020(5)(a).

4.      Pierce County inflicts these punishments administratively and without a meaningful ability-to-pay hearing or a specific finding that either (a) the nonpayment was willful because the person refused to pay from available resources or (b) the person was unable to pay, and alternative methods are inadequate to satisfy a legitimate government interest in punishment or deterrence.

5.      By automatically adding fees and interest when sending accounts to private collection agencies for missed payments, Pierce County is punishing people for being too poor to pay.

6.      By inflicting punishment in this manner, Pierce County is violating the due process, equal protection, and excessive fines clauses of the constitutions of the United States and Washington.

7.      Pierce County's practice of referring overdue debt to collections where additional fines, fees and interest will accumulate also increases the disproportionate and long-lasting harm that the criminal system, and by extension the legal financial debt system, has on Black, Indigenous, and Latinx communities.

8.      LFOs are sums of money ordered by courts that may include restitution, attorneys' fees, jail fees, community supervision costs, and "any other financial obligation that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1   is assessed to the offender." *See, e.g.*, RCW 9.94A.030(31). In Washington, a single conviction

2   can be subject to up to 28 different types of fines, fees, and costs. Alexes Harris et al., *Monetary*

3   *Sanctions in Washington*, Monetary Sanctions in the Criminal Justice System, 201, 202-203

4   (2017).[1]

5          9.      LFOs are disproportionately assessed on Black, Latinx, and Indigenous

6   individuals. Alexes Harris, *Symposium, Monetary Sanctions as a Permanent Punishment: LFOs in*

7   *Washington State Today in Supreme Court Symposium Legal Financial Obligations (LFOs):*

8   *Beyond Defining the Problem; Advancing Solutions*, Washington State Minority and Justice

9   Commission (June 6, 2018).[2]

10         10.     As a result of racial disparities in policing and enforcement, Black, Latinx, and

11  Indigenous individuals are disproportionately represented in Washington's criminal legal

12  system and are thus more likely to incur LFOs. For example, Black individuals make up only 5.6

13  percent of Pierce County's population but in 2019, 17.4 percent of arrests and 25 percent of jail

14  bookings were of Black individuals according to county data. *Criminal Justice Review of Policies*

15  *& Practices* (September 10, 2020).[3] These disparities are heightened in metro areas such as

16  Tacoma, where Black individuals were 9.7 percent of the population but accounted for 33.5

17  percent of arrests in 2019. *Id.*

18         11.     Accounting for all other factors, Black, Latinx, and Indigenous people in

19  Washington are sentenced to LFOs more frequently and assessed higher amounts than white

20  individuals. *See* Katherine A. Beckett, Alexes M. Harris & Heather Evans, *The Assessment and*

21  *Consequences of Legal Financial Obligations in Washington State* at 30 (Wash. State Minority &

22

23  ─────────────────

24  [1] Available at http://www.monetarysanctions.org/wp-content/uploads/2017/04/Monetary-Sanctions-Legal-Review-Final.pdf.

25  [2] Available at https://www.tvw.org/watch/?eventID=2018061018.

    [3] Available at
26  https://www.piercecountywa.gov/DocumentCenter/View/94647/Digital_Report_Criminal_Justice_Review_Council_Final.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1   Justice Comm'n 2008).[4] On a per capita basis in Washington, white individuals owe $210 in LFOs

2   per 100,000 persons, whereas Latinx individuals owe $235 and Black individuals owe $650.

3   Bryan L. Adamson, *Debt Bondage: How Private Collection Agencies Keep the Formerly*

4   *Incarcerated Tethered to the Criminal Justice System*, 15 Nw. J.L. & Soc. Pol'y 305, 319 (2020).

5       12.     Moreover, Black, Latinx, and Indigenous individuals disproportionately struggle

6   to pay back LFO debt, leaving them to owe more debt for longer periods of time. *See* Frank

7   Edwards and Alexes Harris, *An Analysis of Court Imposed Monetary Sanctions in Seattle*

8   *Municipal Courts, 2000-2017*, A Report Prepared For The City of Seattle, Office for Civil Rights,

9   at 21-22, 26 (July 28, 2020).[5]

10      13.     This disproportionate inability to pay is rooted in the racial wealth gap built into

11  the discriminatory structure of American society that sits on a foundation of nearly 250 years of

12  enslavement and stolen wealth. *See generally* Thomas Craemer et al., *Wealth Implications of*

13  *Slavery and Racial Discrimination for African American Descendants of the Enslaved*, 47 Rev.

14  Black Pol. Econ. 218 (2020).

15      14.     The racial and wealth inequities inherent in LFOs only multiply when county

16  officials, such as in Pierce County, refer LFOs to private debt collection agencies.

17      15.     Pierce County's policy, practice, and custom of referring overdue LFO accounts

18  to commercial collection agencies results in the automatic assessment of additional charges—

19  referred to by the County and collection agency as "statutory court costs"—as well as interest,

20  both of which become part of the underlying LFOs.

21      16.     The additional charges and interest significantly increase the length of time that

22  an indigent person will remain subject to the jurisdiction of the superior court. Washington

23  court data indicate that for felony convictions, even those who make regular payments of $50 a

24  _____

25  [4] Available at https://media.spokesman.com/documents/2009/05/study_LFOimpact.pdf.

26  [5] Available at
https://www.seattle.gov/Documents/Departments/CivilRights/SMC%20Monetary%20Sanctions%20Report%207.2
8.2020%20FINAL.pdf.

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  month toward a typical legal debt will remain in arrears 30 years later, and it will take more

2  than a decade for those who regularly pay $100 a month to eradicate their legal debt, even

3  assuming no additional monetary sanctions are imposed. Alexes Harris, Heather Evans, and

4  Katherine Beckett, *Drawing Blood from Stones: Legal Debt and Social Inequality in the*

5  *Contemporary United States*, AJS Volume 115 Number 6 (May 2010): 1753-99, at 1776-77.[6]

6      17.    In 2014, the average amount of LFOs assessed per felony case was $2,540. Wash.

7  State Reentry Council, *Report of the Statewide Reentry Council*, at 8 (Dec. 2018).[7] Because most

8  defendants in Washington's criminal justice system are indigent and can only afford to pay an

9  average of about $30 a month towards their LFO debt, they often remain tied to the court

10  system for decades. Alexes Harris, *A Pound of Flesh: Monetary Sanctions as Punishment for the*

11  *Poor* 56 (2016). This is due in part to the compounding debt caused by LFOs accruing interest

12  and extra fees when referred to private collectors.

13      18.    If a defendant misses an LFO payment—including a payment missed due to

14  homelessness, unemployment, or other extenuating factors—a county official may refer the

15  debt to a private collection agency thirty days later. RCW 36.18.190. The debt collector may by

16  statute add a collection fee of up to 50 percent of the first $100,000 in outstanding LFO debt

17  and 35 percent of anything over $100,000. RCW 19.16.500(1)(b).

18      19.    In Pierce County, the collection fee is approximately 18 percent for district court

19  LFOs and 23 percent for superior court LFOs.

20      20.    Until at least June 7, 2018, Pierce County assessed interest at a rate of 12

21  percent per annum on LFOs imposed in criminal proceedings that were referred to collection

22  agencies. This interest, which started to accrue at the time of referral, was added to the LFOs

23  and remains on accounts in collections. The County continues to assess interest at a rate of 12

24  percent per annum on restitution imposed in a criminal proceeding. RCW 3.62.020(5)(a). Pierce

[6] Available at https://faculty.washington.edu/kbeckett/articles/AJS.pdf.

[7] Available at http://www.commerce.wa.gov/wp-content/uploads/2013/01/1-2-2019-CSHD-Commerce-Reentry-Report-2018.pdf.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1    County can also assess interest at a rate of 12 percent per annum on LFOs not imposed in a

2    criminal proceeding. *Id.*

3         21.    Lengthening the time it will take a person to pay off LFO debt also lengthens the

4    time it takes for any lost rights to be restored and extends the collateral consequences

5    associated with having an active record, including negative consequences in employment;

6    access to public and private housing (42 U.S.C. § 1437f (d)(1)(B)(v)(II)(2018) (low income

7    housing assistance)); access to  financial assistance (42 U.S.C. § 608(a)(9)(A) (2012) (Temporary

8    Aid to Needy Families (TANF) benefits), 7 U.S.C. § 2015(k)(1) (2018) (Supplemental Nutrition

9    Assistance Program (SNAP) benefits), and 42 U.S.C. § 1382(e)(4)(A)(ii) (2012) (Supplemental

10   Security Income)); damage to credit; and limitations on the ability to establish bank accounts.

11   Mechanisms used to target and collect court debt include suspending drivers' licenses,

12   garnishing needed wages to support families, civil judgments brought by collection agencies,

13   liens, and tax refund interception. Bryan L. Adamson, *Debt Bondage: How Private Collection*

14   *Agencies Keep the Formerly Incarcerated Tethered to the Criminal Justice System*, 15 Nw. J.L. &

15   Soc. Pol'y 305, 318 (2020).

16        22.    Pierce County's LFO collection system fuels poverty and social inequality by

17   reducing income and the capacity to accumulate wealth. Harris, *Drawing Blood from Stones*, at

18   1778.  These harms increase when LFO debt is referred to a private collection agency.

19        23.    Pierce County's LFO collection system is unconstitutional.

20        24.    The Due Process and Equal Protection clauses of the Fourteenth Amendment to

21   the United States Constitution and Article I, Sections 3 and 12 of the Washington State

22   Constitution prohibit punishing a person for nonpayment of LFOs without a meaningful ability-

23   to-pay hearing and a specific finding that either (a) the nonpayment was willful because the

24   person refused to pay from available resources or failed to make sufficient efforts to acquire

25   additional resources or (b) the person was unable to pay, despite having made sufficient efforts

26   to acquire resources, and alternative methods are inadequate to satisfy a legitimate

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1   government interest in punishment or deterrence. *Bearden v. Georgia*, 461 U.S. 660, 672-73

2   (1983); *Smith v. Whatcom Cnty. Dist. Court*, 147 Wn.2d 98, 111-12, 52 P.3d 485 (2002) (holding

3   *Bearden* must be followed before sanctions are imposed for nonpayment of LFOs); *State v.*

4   *Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997) (holding "ability to pay must be considered"

5   before government "seeks to impose some additional penalty for failure to pay").

6       25.    The Excessive Fines Clause of the Eighth Amendment to the United States

7   Constitution and Article I Section 14 of the Washington State Constitution prohibit the

8   imposition of fines by states or municipalities when the fine is disproportionate to the gravity of

9   the offense to which it bears relationship. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998);

10   *State v. WWJ Corp.*, 138 Wn.2d 595, 603-04, 980 P.2d 1257 (1999). "The touchstone of the

11   constitutional inquiry under the Excessive Fines Clause is the principle of proportionality."

12   *Bajakajian*, 524 U.S. at 334.

13       26.    The charges and interest that Pierce County imposes when referring an account

14   to a private collection agency are themselves LFOs. Thus, the charges and interest are added

15   punishment.

16       27.    Pierce County imposes the charges and interest without any judicial involvement

17   or oversight.

18       28.    Pierce County imposes the charges and interest without inquiring into an

19   individual's ability to pay or determining that nonpayment was willful.

20       29.    The charges and interest are disproportionate when the offense of nonpayment

21   is due to economic circumstances beyond a person's control.

22       30.    Indigent people like Plaintiff Eddie Lee Lemmon have suffered and will continue

23   to suffer harm as a result of Pierce County's unconstitutional policy, practice, and custom.

24       31.    Mr. Lemmon, an indigent person, brings this class action lawsuit under 42 U.S.C.

25   § 1983, the Fourteenth Amendment to the United States Constitution, the Eighth Amendment

26   to the United States Constitution, and Sections 3, 12, and 14 of Article I of the Washington State

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1   Constitution.

2       32.     Mr. Lemmon respectfully asks this Court for injunctive and declaratory relief to

3   prevent further constitutional violations and to protect the rights of all indigent people who

4   owe or will owe LFOs in relation to criminal cases prosecuted in the superior or district courts of

5   Pierce County and who have had or will have their accounts referred to a commercial collection

6   agency.

7                           **II.  JURISDICTION AND VENUE**

8       33.     The Court has jurisdiction over this action under 42 U.S.C. § 1983 because this is

9   an action for deprivation of rights, privileges, and immunities secured by the United States

10  Constitution. *See Staats v. Brown*, 139 Wn.2d 757, 770-71 n.5, 991 P.2d 615 (2000) (noting state

11  courts have jurisdiction in actions brought under 42 U.S.C. § 1983).

12      34.     The Court has jurisdiction over this action under Article IV, Section 6 of the

13  Washington State Constitution and RCW 2.08.010 because this is a case in equity.

14      35.     The Court has jurisdiction over this action under Article IV, Section 6 of the

15  Washington State Constitution and RCW 2.08.010 because exclusive jurisdiction over this

16  matter has not been vested in some other court.

17      36.     The Court has jurisdiction over this action under the Uniform Declaratory

18  Judgments Act. RCW 7.24.010.

19      37.     Venue is proper in this Court under RCW 36.01.050(1) because Thurston County

20  is one of the two judicial districts nearest to Pierce County.

21                              **III.  THE PARTIES**

22      38.     Plaintiff Eddie Lee Lemmon is a resident of Pierce County and an indigent person

23  who has outstanding LFOs imposed by the Pierce County superior court.

24      39.     In December 2010, the Pierce County Clerk referred Mr. Lemmon's LFO account

25  to a commercial collection agency. The outstanding balance at the time was $800, though the

26  County Clerk reported it as $900. When it referred the account to a commercial collection

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  agency, Pierce County automatically assessed collection charges. Pierce County also started

2  assessing interest on the entire balance at a rate of 12 percent per annum.

3       40.      Pierce County failed to provide adequate notice to Mr. Lemmon, inquire into his

4  ability to pay, or determine that his nonpayment was willful before assessing these additional

5  LFOs.

6       41.      Defendant Pierce County is a Washington municipality.

7                    **IV.  CLASS ACTION ALLEGATIONS**

8       42.      Plaintiff Lemmon brings this action pursuant to Civil Rule 23(a) and (b)(2) on

9  behalf of himself and all others similarly situated as members of the following proposed

10  plaintiff class:

> All indigent persons who owe or will owe legal financial obligations
> in relation to criminal cases prosecuted in the superior and district
> courts of Pierce County and who have had or will have their
> accounts referred to a commercial collection agency.

13      43.     The class is so numerous that the individual joinder of all members is

14  impracticable. Thousands of indigent people owe legal financial obligations in relation to

15  criminal cases prosecuted in the superior and district courts of Pierce County and have had

16  their accounts referred to a commercial collection agency.

17      44.     There are questions of law and fact common to the class members. These

18  questions include but are not limited to the following:

19      a.      Whether Pierce County has had and continues to have a policy, practice,

20  or custom of referring the LFO accounts of indigent people to a commercial collection agency.

21      b.      Whether the policy, practice, and custom of referring LFO accounts of

22  indigent people to a commercial collection agency has resulted and continues to result in the

23  imposition of additional punishment by imposing additional LFOs in the form of charges and

24  interest;

25      c.      Whether Pierce County, acting pursuant to its policy, practice or custom,

26  has imposed and continues to impose this additional punishment without adequate notice;

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1             d.      Whether Pierce County, acting pursuant to its policy, practice or custom,

2 has imposed and continues to impose this additional punishment without first inquiring into

3 ability to pay;

4             e.      Whether Pierce County, acting pursuant to its policy, practice or custom,

5 has imposed and continues to impose this additional punishment without first determining that

6 nonpayment was willful;

7             f.      Whether the additional punishment Pierce County has imposed and

8 continues to impose on indigent people is disproportionate because the offense of nonpayment

9 is due to economic circumstances beyond a person's control;

10            g.      Whether Pierce County's policy, practice, or custom of imposing this

11 additional punishment has violated and continues to violate the rights of indigent people; and

12            h.      Whether class members are entitled to declaratory and injunctive relief.

13      45.      Plaintiff Lemmon's claims are typical of the claims of the members of the class he

14 seeks to represent. Like the other class members, Mr. Lemmon owes LFOs in relation to a

15 criminal case prosecuted in the courts of Pierce County and has had his account referred to a

16 commercial collection agency. Pierce County imposed additional punishment on Mr. Lemmon in

17 the form of added collection charges and interest but failed to provide him with adequate

18 notice, inquire into his ability to pay, or determine that his nonpayment was willful before

19 doing so. Moreover, the additional punishment was disproportionate because Mr. Lemmon's

20 nonpayment was due to economic circumstances beyond his control. Accordingly, the claims of

21 Mr. Lemmon and the class arise out of the same policy, practice, and custom of Pierce County

22 and are based on the same legal and remedial theories.

23      46.      Plaintiff Lemmon and his counsel will fairly and adequately protect the interests

24 of the class he seeks to represent. There are no conflicts between Mr. Lemmon and the class

25 members. Mr. Lemmon is represented by counsel who are experienced in class actions and

26 other complex litigation, including cases involving the types of constitutional claims asserted

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1   here; who have substantial knowledge of and experience with the applicable law; who have the

2   resources necessary to represent the class; and who will vigorously prosecute the case on

3   behalf of the class.

4       47.     Pierce County is acting or refusing to act on grounds generally applicable to the

5   class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

6   respect to the class.

7                           **V.  FACTS ENTITLING PLAINTIFF TO RELIEF**

8   **A.     Pierce County has a policy, practice, and custom of imposing additional
          punishment on people who are unable to afford LFOs.**

9

10      Legal Financial Obligations (LFOs) in Pierce County.

11      48.     Legal financial obligations are the fees, fines, costs, and restitution that courts

12  impose as part of a criminal sentence. *See, e.g.*, RCW 9.94A.030(31).

13      49.     Between 2010 and 2017, the Pierce County superior court assessed $105 million

14  in LFOs, and the Pierce County district court assessed $127 million in LFOs—both exclusive of

15  interest. *See* Karin Martin & Matt Fowle, *Mitigating and Understanding the Nature, Extent, and*

16  *Harms of Criminal Justice Debt in Pierce County* 8 (May 15, 2019) (Report to the West Coast

17  Poverty Center). These court fines and fees were imposed on hundreds of thousands of

18  individuals. *Id.*

19      50.     Of the $105 million in LFOs that the Pierce County superior court assessed

20  between 2010 and 2017, less than $10 million was paid during that period. *See id.* At the same

21  time, more than $46 million in interest accrued on the outstanding debt. *See id.*

22      51.     In a 2018 focus group of Pierce County residents with LFOs, "a substantial

23  proportion of participants received convictions before 2010" but still owed money to the

24  County. *Id.* Some even owed LFOs from convictions that occurred in the early 1990s. *Id.* And

25  "many respondents had considerably more criminal justice debt compared to when the judge

26  originally assessed LFOs during conviction. Half of respondents currently owe over $5,000, but

27  only one-fifth (20.8%) were assessed over $5,000 during conviction." *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 11

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

52.     It is unsurprising that many of the people convicted in the superior and district courts of Pierce County are unable to pay the LFOs imposed on them. In Pierce County in 2017, more than 90 percent of those prosecuted in superior court and 42 percent of those prosecuted in district court received a public defender because they could not afford an attorney. Wash. State Office of Public Defense, *2017 Status Report on Public Defense in Washington State* 45 (April 2018).

53.     Pierce County is assessing LFOs on defendants who are unable to pay and then referring those debts to private collections agencies and imposing additional punishment despite the inability of the defendants to pay.

> The Pierce County Clerk and District Court Administrator are responsible for
> collecting unpaid LFOs and establishing County policies and practices in relation
> to that process.

54.     The clerk of each county in Washington "is authorized to collect unpaid legal financial obligations at any time [an] offender remains under the jurisdiction of the court for purposes of his or her legal financial obligations." RCW 9.94A.760(5).

55.     The Pierce County Clerk is Kevin Stock, and he is responsible for collecting LFOs imposed by the Pierce County superior court.

56.     Mr. Stock is a policymaker for Pierce County.

57.     The Pierce County District Court Administrator is also authorized to collect unpaid LFOs.

58.     The Pierce County District Court Administrator is Misty Butler-Robinson, and she is responsible for collecting LFOs imposed by the Pierce County district court.

59.     Ms. Butler-Robinson is a policymaker for Pierce County.

Pierce County's Contract with AllianceOne Receivables.

60.     Pierce County has entered into an agreement with AllianceOne Receivables Management, Inc., a commercial collection agency, "for the recovery of unpaid Legal Financial Obligation Accounts, including victim restitution, ordered in criminal judgments and sentences

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 12

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1    rendered in Pierce County Superior Court." The agreement is outlined in the "Letter of

2    Establishment" attached to this complaint as Appendix 1.

3          61.    On behalf of Pierce County, and in his official capacity as County Clerk, Mr. Stock

4    executed the Letter of Establishment on March 21, 2017, which had an effective date of

5    September 24, 2012. *See* App. 1 at 2.

6          62.    Pierce County extended the agreement on the same terms after it expired on

7    May 31, 2020.

8          63.    The Letter of Establishment provides: "The Pierce County Clerk . . . agree[s] that

9    a statutory court cost [will] be added to each account referred for collection, including

10   restitution collected on behalf of crime victims, and interest . . . ." *Id*. at 1.

11         64.    The Letter of Establishment also provides that the Pierce County Clerk "directs

12   AllianceOne to perform the ministerial act of adding the statutory court cost to the referred

13   amount on its computer at the time of placement." *Id*. at 2.

14         65.    AllianceOne has followed this directive with respect to every LFO account Pierce

15   County has referred to the company. *See id*.

16         66.    The charges that Pierce County assesses amount to 23.4568 percent of debt

17   referred for collections occurring in-state and 29.8701 percent of debt referred for collections

18   occurring out-of-state. *See id*. at 1.

19         67.    These charges apply to the entire balance of each account that is referred, as

20   well as any additional interest that accrues or additional fees that are imposed while the

21   collection agency services the account. *See* App. 1. For example, if an indigent person in

22   Washington accrues $100 in interest while the account is in collections, an additional $23.46 in

23   charges will be automatically assessed.

24         68.    Pursuant to the Letter of Establishment, AllianceOne collects interest on

25   outstanding LFOs, including the charges assessed at the time of referral, at a rate of 12 percent.

26   *See* App. 1.

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 13

<u>Pierce County's Contract with Transworld.</u>

69.     Pierce County has entered into a "Personal Services Agreement" with Transworld Systems, Inc., a commercial collection agency, for the collection of "judgments for unpaid infractions, traffic and non-traffic criminal cases, current and legacy (open infraction and criminal cases) and other judgments payable to Pierce County." The agreement is attached to this complaint as Appendix 2.

70.     On behalf of Pierce County, and in her official capacity as District Court Administrator, Ms. Butler-Robinson executed the Personal Services Agreement on September 11, 2018. *See* App. 2.

71.     Pierce County extended the agreement on the same terms after it expired on August 31, 2020.

72.     The Personal Services Agreement provides: "Uniform collection fees of 15.25% will be applied to all categories of accounts. However, in the event the Contractor forwards a judgment to an approved attorney the collection fee the Contractor is entitled to will be thirty percent (30%)." *Id*. at 8.

73.     The Personal Services Agreement also provides: "interest shall accrue at the statutory rate on judgments and shall be charged pursuant to statutory authority on accounts as provided by law." *Id*.

74.     Transworld has followed this directive with respect to every LFO account Pierce County has referred to the company. *See id*.

75.     The charges that Pierce County assesses amount to 17.9941 percent of debt referred for collections and 42.8571 percent of debt forwarded to an attorney. *See id*.[8]

---

[8] Though it refers to a collection fee of either 15.25 or 30 percent, Transworld takes $15.25 or $30 out of every $100 collected. App. 3 at 9. This results in a collection fee percentage that is higher than stated. For every $100 Transworld collects, it takes a fee of $15.25, and the remaining $84.75 goes to the court as interest or principal. Thus, the fee Transworld actually charges is 17.99 percent (15.25 / 84.75 = .179941). AllianceOne similarly misrepresents its collection fee percentage. *See* App. at a (referring to collection fee of 19 percent while charging 23.46 percent).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 14

1    76.    These charges apply to the entire balance of each account that is referred, as

2    well as any additional interest that accrues or additional fees that are imposed while the

3    collection agency services the account. *See* App. 2 at 8. For example, if an indigent person in

4    Washington accrues $100 in interest while the account is in collections, an additional $17.99 in

5    charges will be automatically assessed.

6    77.    Pursuant to the Personal Services Agreement, Transworld collects interest on

7    outstanding LFOs, including the charges assessed at the time of referral, at a rate of 12 percent.

8    *See* App. 2 at 8.

9    When it assesses collection charges and interest, Pierce County imposes
     additional punishment on the person whose account is referred to the collection
10   agency.

11   78.    The charges and interest that Pierce County assesses when it refers court debt to

12   AllianceOne and Transworld are legal financial obligations. *See* RCW 19.16.500(4).

13   79.    Regardless of an individual's ability to pay, Pierce County refers accounts to

14   AllianceOne and Transworld after 30 days of nonpayment or a late payment.

15   80.    By assessing additional LFOs, Pierce County is imposing additional punishment

16   on the indigent people whose accounts are referred to collections for failure to pay. This

17   punishment takes two primary forms.

18   81.    First, Pierce County substantially increases the monetary sanctions imposed in

19   relation to the underlying convictions; indeed, each debt automatically enlarges by

20   approximately 18 or 23 percent.

21   82.    Second, Pierce County substantially increases the amount of time indigent

22   people will remain under the purview of the superior court because that court retains

23   jurisdiction over each convicted person until the person pays all LFOs in full or the LFOs are

24   resolved by other means. *See State v. Blazina*, 182 Wn.2d 827, 836-37, 344 P.3d 680 (2015)

25   ("courts retain jurisdiction over impoverished offenders . . . until they completely satisfy their

26   LFOs"); RCW 9.94A.760(5) ("For an offense committed on or after July 1, 2000, the court shall

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 15

1   retain jurisdiction over the offender, for purposes of the offender's compliance with payment

2   of the legal financial obligations, until the obligation is complete satisfied, regardless of the

3   statutory maximum for the crime."). "This active record can have serious negative

4   consequences on employment, on housing, and on finances." *Blazina*, 182 Wn.2d at 837. "All of

5   these reentry difficulties increase the chances of recidivism." *Id*.

6           83.     Significant collateral consequences can result from outstanding LFOs. *See* Martin

7   & Fowle, *supra*, at 4-5. Most of the participants of a Pierce County focus group conducted in

8   late 2018 had experienced negative consequences from unpaid LFOs including driver's license

9   suspension, increased fines, additional fees, wage garnishment, and jail time, as well as indirect

10   consequences including damaged credit and an inability to obtain employment, housing, and

11   public assistance. *Id*. Many were homeless or lived with family or friends. *Id*. at 5. Seventy-three

12   percent of the respondents said they had to forgo at least two or more necessities to pay LFOs,

13   and the most common necessities given up were groceries, rent payments, transportation

14   costs, car payments, and utility bills. *Id*.

15           84.     Unpaid LFOs can also prevent someone from vacating a misdemeanor conviction

16   when they otherwise would be entitled to. *See* RCW 9.96.060(2)(f)(iv), (g).

17         <u>Pierce County fails to conduct an ability-to-pay hearing or determine that</u>
      <u>nonpayment was willful before imposing additional punishment on indigent</u>
18         <u>people for overdue LFO accounts.</u>

19
        85.     Pierce County follows a standard procedure for referring overdue LFO accounts
20
   to a commercial collection agency.
21
        86.     When a person's LFO account becomes delinquent, the County sends the person
22
   a form letter. The letter states that the person has thirty days to pay the outstanding balance in
23
   full or make new arrangements for payment with the Pierce County Clerk. The letter further
24
   states that if the person does not satisfy one of these two requirements, the account will be
25
   turned over to a commercial collection agency.
26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

87.     Pierce County's form letter fails to provide several pieces of critical information to the person who owes the LFO debt. For example, the letter fails to explain that if the person's account is referred, the County will add substantial charges and interest to the person's underlying debt. The letter also fails to explain that the person has a right to an ability-to-pay hearing before the County imposes these additional LFOs and if the person is indigent, the County may not assess such charges and interest. Similarly, the letter fails to explain that if the person is unable to afford the underlying debt, they are legally entitled to have the debt reduced or waived.

88.     The letter outlines that there are only two options to avoid further fines and fees: either pay the outstanding balance in full within thirty days or arrange for payment with the Pierce County Clerk. Both options require that the individual have access to discretionary funds. In effect, referring a person's account to collections serves as punishment for being unable to pay debt within the given timeframe and parameters, unfairly targeting and punishing people for their indigency.

89.     Pierce County does not inquire into a person's ability to pay before referring an LFO account to the commercial collection agency and imposing additional punishment on the person who owes the debt.

90.     Pierce County does not determine that nonpayment was willful before referring an LFO account to the commercial collection agency and imposing additional punishment to the person who owes the debt.

91.     There are several unwilful, non-contumacious reasons that may lead a person to not make payments. These include an inability to pay their fines in full when due and an inability to pay their fines when combined with the fees and interest charged by collection agencies. Being unable to make payments can be the result of unemployment, temporary layoffs, incarceration, lack of any expendable income, or a combination of all of those and more.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

92.     Pierce County does not add fines and fees to the accounts of those who are able to pay their LFOs within thirty days; the County only punishes those who cannot pay.

**B.      Pierce County's policy, practice, and custom of imposing additional punishment on indigent people for unpaid LFOs is unconstitutional.**

93.     When a person faces punishment for nonpayment of LFOs, "constitutional fairness principles are implicated." *Blank*, 131 Wn.2d at 241-42.

94.     Before a person may constitutionally be punished for nonpayment of LFOs, the government must examine the person's financial circumstances and determine her current ability to pay. *See id.* at 242 ("the relevant time [for an ability-to-pay inquiry] is the point of collection and when sanctions are sought for nonpayment").

95.     Factors to consider when inquiring into a person's ability to pay include whether the person has been incarcerated; whether the person has other debts; whether the person's household income is at or below 1.25 times the federal poverty guideline; whether the person receives assistance from a needs-based, means-tested assistance program; and any other compelling circumstances that demonstrate the person is unable to pay. *Id.*

96.     If the person meets the General Rule 34 standard for indigence, the government must "seriously question" the person's ability to pay LFOs. *Id.*

97.     The Fourteenth Amendment to the United States Constitution and Article I, Sections 3 and 12 of the Washington State Constitution prohibit governments from punishing people for nonpayment of LFOs when the nonpayment is due to indigence. *Bearden*, 461 U.S. at 672-73; *Smith*, 147 Wn.2d at 111-12; *Blank*, 131 Wn.2d at 241-42.

98.     Accordingly, several requirements must be satisfied before the government sanctions a person for nonpayment of LFOs. *See Bearden*, 461 U.S. at 672-73; *Smith*, 147 Wn.2d at 111-12. First, the government must notify the person that he or she may be charged with nonpayment of a fine and, if the failure to pay is determined to be "willful," may be punished as a result. *See Smith*, 147 Wn.2d at 112-13. Second, the government must conduct a pre-

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  deprivation inquiry into the person's ability to pay, efforts to secure resources to pay, and

2  adequacy of alternatives to incarceration, and this inquiry must be on the record. *Bearden*, 461

3  U.S. at 672; *Smith*, 147 Wn.2d at 112; *Blank*, 131 Wn.2d at 242. And third, there must be a

4  finding that the failure to pay is willful (either because the person has the means to pay and has

5  refused to do so, or because the person has failed to make sufficient efforts to acquire

6  additional resources). If the failure to pay is not willful—that is, if the person was unable to pay

7  despite having made sufficient efforts to acquire resources—the government must also find

8  that alternative methods are inadequate to satisfy a legitimate interest in punishment or

9  deterrence. *See Bearden*, 461 U.S. at 672; *Smith*, 147 Wn.2d at 112. The general rule, though, is

10  that a person may not be sanctioned for nonpayment of a fine where the failure to pay is solely

11  because of indigence. *See Smith*, 147 Wn.2d at 111.

12       99.     Pierce County routinely has imposed and continues to impose additional

13  punishment on indigent people for nonpayment of LFOs without first notifying them of the

14  relevant legal standards constraining the County's ability to punish people for failure to pay

15  LFOs.

16       100.    Pierce County routinely has imposed and continues to impose additional

17  punishment on indigent people for nonpayment of LFOs without first conducting inquiries into

18  their financial circumstances and their current ability to afford the overdue debts.

19       101.    Pierce County routinely has imposed and continues to impose additional

20  punishment on indigent people for nonpayment of LFOs without first determining that the

21  nonpayment was willful.

22       102.    These deprivations of due process and equal protection are part and parcel of,

23  and result directly from, Pierce County's policy, practice, and custom of referring overdue LFO

24  accounts to a commercial collection agency and, in the process, imposing additional

25  punishment on indigent people by automatically assessing charges and interest.

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

103.    Pierce County's policy, practice, and custom is unconstitutional because it punishes indigent people more harshly than those who can afford to pay the LFOs imposed on them in relation to cases prosecuted in superior court.

104.    Pierce County's policy, practice, and custom is also unconstitutional because it results in disproportionate and excessive fines being imposed on indigent people for the offense of nonpayment, which is due to economic circumstances beyond their control.

105.    A penalty or requirement would have to be "solely remedial" to fall outside the scope of what is considered punishment for the purposes of the Excessive Fines Clause. *Austin v. United States*, 509 U.S. 602, 602-03 (1993). A penalty or requirement that is at least partially punitive is punishment and is considered a fine even if it also has additional remedial purposes. *Timbs v. Indiana*, 139 S. Ct. 682, 690 (2019).[9]

106.    The Supreme Court has held that all civil penalties have some deterrent effect. *United States. v. Hudson*, 522 U.S. 93, 102 (1997). Recently, the Ninth Circuit held that the Excessive Fines Clause applies to municipal fines, concluding that the recent Supreme Court decision in *Timbs* "affirmatively opens the door for Eighth Amendment challenges to fines imposed by state and local authorities." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 920 (9th Cir. July 22, 2020). The Ninth Circuit also implied that penalties for late payments may be grossly disproportional to the offense of failing to pay an initial fine by remanding the issue. *Id.* at 925. Evaluating whether the penalty amounts to an excessive fine requires a proportionality analysis that balances the underlying offense against the amount of the fine. *See Tellevik v. 6717 100th St. S.W.*, 83 Wn. App. 366, 375-76, 921 P.2d 1088 (1996).

---

[9] Washington's legislature has stated that one of the purposes of LFOs is to hold offenders "accountable," a goal that is retributive in nature: "The purpose of this act is to create a system that: (1) Assists the courts in sentencing felony offenders regarding the offenders' LFOs; (2) *holds offenders accountable to victims, counties, cities, the state, municipalities, and society for the assessed costs associated with their crimes*; and (3) provides remedies for an individual or other entities to recoup or at least defray a portion of the loss associated with the costs of felonious behavior." Chapter 9.94A RCW 1989 c 252 § 1 (emphasis added).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 20

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1    107.    Pierce County has punished Plaintiff Lemmon and the class members for failure

2    to pay LFOs. The gravity of this offense is especially low when an individual fails to pay due to

3    economic circumstances. The fines and fees imposed on indigent people when Pierce County

4    refers their overdue LFOs to collections are grossly disproportionate to their failure to pay

5    because it punishes poverty rather than any willful or contumacious conduct.

6    108.    As the Washington Supreme Court has recognized: the government "cannot

7    collect money from defendants who cannot pay," and this obviates any need to impose

8    additional punishment on a person for nonpayment of LFOs. *Blazina*, 182 Wn.2d at 837; *see*

9    *also City of Richland v. Wakefield*, 186 Wn.2d 596, 607, 380 P.3d 459 (2016) (finding it "unjustly

10   punitive" to take actions against indigent people that "cause their LFO amount to increase").

11   **C.    Pierce County's violations of Plaintiff Lemmon's constitutional rights.**

12   109.    Plaintiff Eddie Lee Lemmon is a 56-year-old Black man and military veteran. He

13   lives with disabilities and currently resides in a shelter operated by the Washington State

14   Department of Veterans Affairs. Mr. Lemmon has four grown children and one teenage son. His

15   son lives with Mr. Lemmon's former spouse.

16   110.    Mr. Lemmon works 15 hours per week at the shelter conducting screenings, and

17   he is paid $10 per hour. The rest of his income is in the form of VA and social security benefits.

18   The Social Security Administration deducts $517 each month for Mr. Lemmon's teenage son,

19   and Mr. Lemmon pays $659 each month for room and board.

20   111.    Over ten years ago, on October 8, 2010, Mr. Lemmon was convicted on three

21   charges in Pierce County superior court under cause number 10-1-00961-4.

22   112.    The court sentenced Mr. Lemmon to confinement and assessed $800 in LFOs.

23   113.    On December 1, 2010, the Pierce County Clerk sent a form letter to Mr.

24   Lemmon, who was incarcerated at the time. The letter stated: "As a condition of the Judgment

25   and Sentence in [Case No. 10-1-00961-4] the Pierce County Superior Court permitted you to

26   make payments on your LFO's for court costs, fines, and/or restitution. According to our

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 21

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  records you have failed to comply with this condition of your Judgment and Sentence and are
2  now delinquent on your LFO payments." The letter Mr. Lemmon received is attached to this
3  complaint as Appendix 3.

4      114.    The letter also stated: "Within 30 days from the date of this notice you must pay
5  the outstanding balance due or make new arrangements for payment with this office. If you do
6  not respond to this notice within the 30 days we will turn this case over to our Commercial
7  Collection Agent. As of that time you will be required to deal ONLY with the collection agent
8  regarding payments." App. 3.

9      115.    The letter listed both the "Judgment Amount" and the "Outstanding Balance" as
10  $900 even though the court had assessed $800 in LFOs.

11      116.    Mr. Lemmon could not afford to pay his LFOs at the time they were assessed
12  because he was unemployed prior to his judgment and incarceration. Mr. Lemmon also could
13  not make payments toward his LFO debt at the time Pierce County sent the form letter
14  notifying him of his delinquency as he was still incarcerated. Pierce County did not inquire into
15  Mr. Lemmon's ability to pay his outstanding debt before sending his debt to the collection
16  agent.

17      117.    After Mr. Lemmon's release he remained unemployed for months due to the
18  difficulty of obtaining a job with a criminal record. Since his release, Mr. Lemmon has mainly
19  worked part-time, minimum wage jobs as a dishwasher and as a maintenance worker at a gas
20  station. The last time Mr. Lemmon was fully employed was in 2009, months prior to his
21  incarceration, when he worked as a meat cutter at a grocery store.

22      118.    Mr. Lemmon has also struggled to retain stable housing since his release over a
23  decade ago. Mr. Lemmon has stayed on his brother's property, with a friend, in shelters, in
24  hotels, and eventually was able to get an apartment through the VA program. However, after
25  undergoing three major surgeries, Mr. Lemmon was evicted during his hospitalization. Since
26  being evicted, Mr. Lemmon has stayed in a Veterans Home in Orting.

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 22

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1    119.    Mr. Lemmon continues to have no major assets. He has never owned a home.

2    120.    Mr. Lemmon's LFOs remain in collection status to this day. As of November 19,

3    2020, Pierce County reported that Mr. Lemmon's balance was $1,634.28, comprising $900 in

4    principal and $734.28 in interest. Based on the agreement Pierce County has with AllianceOne,

5    the collection fee on Mr. Lemmon's account likely exceeds $380, bringing his total LFO debt to

6    over $2,000—more than 2.5 times what the superior court initially assessed.

7    121.    The letter that Pierce County sent to Mr. Lemmon in December 2010 failed to

8    provide him with several pieces of critical information. For example, the letter failed to explain

9    that if the account were referred to a commercial collection agency, the County would impose

10   additional punishment on Mr. Lemmon by adding substantial charges and interest to the

11   underlying debt. The letter also failed to explain that Mr. Lemmon had a right to an ability-to-

12   pay hearing before the County imposed these additional LFOs and that if Mr. Lemmon was

13   found to be unable to pay his LFOs, the County would not be allowed to assess such charges

14   and interest. The letter also failed to explain that if Mr. Lemmon was unable to afford the

15   underlying debt, he could ask to have the debt reduced or waived.

16   122.    Mr. Lemmon is currently indigent and does not have the ability to pay his LFOs.

17   Mr. Lemmon is indigent because he receives poverty-related veterans' benefits and

18   supplemental security income. *See* RCW 10.101.010(3)(a); GR 34(a)(3)(A).

19   123.    Mr. Lemmon did not have the ability to pay the LFOs imposed on him at the time

20   of sentencing by the Pierce County superior court in 2010.

21   124.    Mr. Lemmon likewise did not have the ability to pay the LFOs imposed on him at

22   the time Pierce County sent the court debt to a private collection agency.

23   125.    Pierce County imposed additional punishment on Mr. Lemmon without first

24   inquiring into his ability to pay.

25

26

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 23

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

126.     Pierce County imposed additional punishment on Mr. Lemmon without first determining that his nonpayment was willful.

127.     At the time Pierce County imposed additional punishment on Mr. Lemmon, he lacked the ability to pay the LFOs he owed to the County, and it was highly unlikely that he would be able to pay them in the foreseeable future.

128.     Pierce County, through AllianceOne, continues to try and collect the outstanding LFOs from Mr. Lemmon despite his indigence.

## VI.  CAUSES OF ACTION—COUNT ONE
### (under Section 1983 for violation of the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983))

129.     The allegations above are incorporated herein.

130.     The Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution prohibit punishing a person for nonpayment of LFOs when the nonpayment is due to the person's indigence unless alternative methods are inadequate to satisfy a legitimate interest in punishment or deterrence. *Bearden*, 461 U.S. at 672-73.

131.     Before imposing additional punishment on a person for nonpayment of LFOs, Pierce County must conduct an inquiry into the person's ability to pay, efforts to secure resources to pay and, if the person lacks the ability to pay despite having made sufficient efforts to acquire additional resources, the availability and adequacy of alternative punishments. Pierce County is prohibited from imposing additional punishment on the person unless the County conducts this inquiry and finds that (a) the nonpayment is willful, either because the person refuses to pay from available resources or has failed to make sufficient efforts to acquire additional resources, or (b) the person is unable to pay despite having made sufficient efforts to acquire resources and alternative methods are inadequate to satisfy a legitimate government interest in punishment or deterrence.

132.     Acting under color of law, Pierce County has a policy, practice, and custom of referring overdue LFO accounts to a commercial collection agency and, in the process,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 24

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  punishing indigent people by automatically assessing substantial charges and interest without

2  conducting a constitutionally required inquiry into the ability of those people to pay, the

3  adequacy of efforts to acquire resources to pay, the willfulness of nonpayment, or the

4  availability of alternatives to additional punishment. As a result, Pierce County is violating and

5  causing violations of the Fourteenth Amendment of the United States Constitution.

6       133.    Plaintiff Lemmon and members of the class are indigent persons who owe or will

7  owe legal financial obligations in relation to criminal cases prosecuted in the superior or district

8  courts of Pierce County and who have had or will have their accounts referred to a commercial

9  collection agency.

10       134.    Pierce County—acting pursuant to its policy, practice, and custom—has imposed

11  additional punishment on Plaintiff Lemmon and members of the class by referring their LFO

12  accounts to a commercial collection agency without conducting a constitutionally required

13  inquiry into the ability of those people to pay, the adequacy of efforts to acquire resources to

14  pay, the willfulness of nonpayment, or the availability of alternatives to additional punishment.

15       135.    The additional punishment Pierce County has imposed is ongoing and unless

16  enjoined by the Court, the County will continue to violate and cause violation of the

17  constitutional rights of Plaintiff Lemmon and members of the class.

18       136.    As a result of Pierce County's unconstitutional actions, Plaintiff Lemmon and the

19  class members are entitled to declaratory and injunctive relief as well as an award of attorneys'

20  fees and costs.

21              **VII.  CAUSES OF ACTION—COUNT TWO**

22  **(for violation of Article I, Sections 3 and 12 of the Washington Constitution)**

23       137.    The allegations above are incorporated herein.

24       138.    Article I, Sections 3 and 12 of the Washington Constitution also prohibit

25  punishing a person for nonpayment of LFOs when the nonpayment is due to the person's

26  indigence unless alternative methods are inadequate to satisfy a legitimate interest in

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1    punishment or deterrence.

2        139.    This cause of action is coextensive with the cause of action for violation of the

3    United States Constitution set forth in Count Three.

4                          **VIII. CAUSES OF ACTION – COUNT THREE**

5            **(under Section 1983 for violation of the Excessive Fines Clause of the
             Eighth Amendment to the United States)**

6        140.    The allegations above are incorporated herein.

7        141.    The Excessive Fines Clause of the Eighth Amendment, incorporated against the

8    states through the Fourteenth Amendment, limits the government's power to extract payments

9    that are disproportionate to the gravity of the offense.

10       142.    Any payment required of an individual by the government, whether monetary or

11   in kind, is subject to constitutional scrutiny as an excessive fine.

12       143.    Referring LFO debt to a commercial collection agency is a substantial monetary

13   punishment for failure to pay court debt and thus is a fine subject to constitutional excessive

14   fines analysis.

15       144.    Fines that are grossly disproportionate to the underlying offense are

16   unconstitutional excessive fines.

17       145.    Referring LFO debt to commercial collection agencies where additional fines and

18   fees are added is grossly disproportionate to the underlying offense—failure to pay due to

19   indigency. Thus, Pierce County's practice of automatically imposing excessive fines when

20   referring debt to collections for failure to pay is unconstitutional.

21       146.    As a result of Pierce County's unconstitutional actions, Plaintiff Lemmon and the

22   class members are entitled to declaratory and injunctive relief as well as an award of attorneys'

23   fees and costs.

24

25

26

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 26

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

## VIII.  CAUSES OF ACTION – COUNT FOUR

### (for violation of Article I, Section 14 of the Washington Constitution)

147.    The allegations above are incorporated herein.

148.    The Washington State Constitution Article I, Section 14 also limits the government's power to extract payments that are disproportionate to the gravity of the offense. Wash. Const. art. I § 14.

149.    This cause of action is coextensive with the cause of action for violation of the United States Constitution set forth in Count Three.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.      For certification of the class defined above;

B.      For a declaration that Pierce County's policy, practice, and custom of referring overdue LFO accounts to commercial collection agencies and, in the process, punishing indigent people by automatically assessing substantial charges and interest without adequate notice, an inquiry into their ability to pay, or a determination that the nonpayment was willful has violated and will continue to violate the rights of Plaintiff Lemmon and class members under the Fourteenth Amendment to the United States Constitution and Article I, Sections 3 and 12 of the Washington State Constitution;

C.      For a declaration that Pierce County's policy, practice, and custom of referring overdue LFO accounts to a commercial collection agency and, in the process, punishing indigent people by automatically assessing substantial charges and interest that are disproportionate to the offense of nonpayment has violated and will continue to violate the rights of Plaintiff Lemmon and class members under the Excessive Fines Clause of the Amendment to the United States Constitution and Article I, Section 14 of the Washington State Constitution;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 27

1    D.    For the issuance of preliminary and permanent injunctions prohibiting Pierce

2    County from allowing any LFO account to remain referred to a commercial collection agency

3    unless the County can demonstrate that it provided adequate notice, inquired into ability to

4    pay, and determined that nonpayment was willful before referring the account;

5    E.    For the issuance of preliminary and permanent injunctions prohibiting Pierce

6    County from referring any LFO account to a commercial collection agency unless the County has

7    first provided adequate notice, inquired into ability to pay, and determined that nonpayment

8    was willful;

9    F.    For the issuance of preliminary and permanent injunctions prohibiting Pierce

10   County from enforcing any charges and interest assessed in relation to the referral of an LFO

11   account to a commercial collection agency without adequate notice, an inquiry into ability to

12   pay, and a determination that the nonpayment was willful;

13   G.    For the issuance of preliminary and permanent injunctions prohibiting Pierce

14   County from enforcing against indigent persons any charges and interest assessed in relation to

15   the referral of LFO accounts to commercial collection agencies;

16   H.    For an award of Plaintiff's attorneys' fees and costs; and

17   I.    For such other and further relief as the Court may deem just and proper.

18   RESPECTFULLY SUBMITTED AND DATED this 26th day of April, 2021.

19                              TERRELL MARSHALL LAW GROUP PLLC

20                              By: /s/ Toby J. Marshall, WSBA #32726
21                                  Toby J. Marshall, WSBA #32726
                                    Email: tmarshall@terrellmarshall.com
22                                  936 North 34th Street, Suite 300
                                    Seattle, Washington 98103-8869
23                                  Telephone: (206) 816-6603
                                    Facsimile: (206) 319-5450
24

25

26

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION

By:  /s/ Breanne Schuster, WSBA #49993
     Breanne Schuster, WSBA #49993
     Email: bschuster@aclu-wa.org

By:  /s/ Julia Mizutani, WSBA #55615
     Julia Mizutani, WSBA #55615
     Email: jmizutani@aclu-wa.org
     P.O. Box 2728
     Seattle, Washington 98111-2728
     Telephone: (206) 624-2184
     Facsimile: (206) 624-2190

*Attorneys for Plaintiff*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 29

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

# — APPENDIX 1 —



LETTER OF ESTABLISHMENT

Effective date: September 24, 2012

In accordance with the State Contract 02912 for Debt Collection Services, and RCW 36.18.190, Pierce County ("Client") wishes to utilize, and AllianceOne Receivables Management, Inc. ("AllianceOne") wishes to provide, collection services for the recovery of unpaid Legal Financial Obligation accounts, including victim restitution, ordered in criminal judgments and sentences rendered in Pierce County Superior Court. RCW 36.18.190 provides in pertinent part:

> Superior court clerks may contract with collection agencies under chapter 19.16 RCW or may use county collection services for the collection of unpaid court-ordered legal financial obligations as enumerated in RCW 9.94A.030 that are ordered pursuant to a felony or misdemeanor conviction and of unpaid financial obligations imposed under Title 13 RCW. The costs for the agencies or county services shall be paid by the debtor. The superior court may, at sentencing or at any time within ten years, assess as court costs the moneys paid for remuneration for services or charges paid to collection agencies or for collection services. By agreement, clerks may authorize collection agencies to retain all or any portion of the interest collected on these accounts.

The parties agree that the statutory court cost to be added by Client to the account balances (including interest accrued and accruing, and assessed fees, if any) referred to AllianceOne as of the effective date of this letter agreement will be as follows:

The Pierce County Clerk of the Superior Court and AllianceOne Receivables Management Inc., agree that a statutory court cost be added to each account referred for collection, including restitution collected on behalf of crime victims, and interest, as provided by the Contract.

Pursuant to the Contract, AllianceOne will retain from each payment received 19% (instate regular and legal) and 23% (out-of-state regular and legal) as its fee.

Example:

Pierce County Superior Court Fine and Interest: $100.00
Statutory Court Cost $23.4568 per $100 assessed: $ 23.4568
Total Judgment to be collected: $123.4568

Full Payment Received: $123.4568
Remittance to Court: $100.00
19% Retained by AllianceOne: $ 23.4568 (= 19% of $123.4568 total judgment)

Partial payments will be remitted on the same pro-rata basis: 81% remitted to the Clerk, 19% retained by AllianceOne, until paid in full.

All interest collected will be remitted to the Clerk.

This Letter of Establishment amends and supersedes any other contract or understanding between the

(Letter of Establishment)

Page **1** of **2**

ORIGINAL

Pierce County Clerk and AllianceOne Receivables Management, Inc.

Client directs AllianceOne to perform the ministerial act of adding the statutory court cost to the referred amount on its computer at the time of placement. All accounts listed prior to the effective date of this letter agreement will remain at the then-current rates.

Client will provide notice to account debtors prior to referral to collection.

This Letter of Establishment and the above-referenced State of Washington Contract are agreed to by the undersigned, effective as of the date above specified:

Pierce County

By: _____
Kevin Stock
Pierce County Superior Court Clerk
930 Tacoma Ave. So., Rm 110
Tacoma, WA 98402
253-798-3372

_3-21-17_____
Date

AllianceOne Receivables Management, Inc.

By: _____
Kevin Underwood
Senior Vice President
6565 Kimball Ave, St 200
Gig Harbor, WA 98335
253-620-2200

_3-22-17_____
Date

Approved as to form:

By: _____
Deputy Prosecuting Attorney    3-21-17

Page **2** of 2



### ADDENDUM #1 TO
### LETTER OF ESTABLISHMENT
### PIERCE COUNTY

This Addendum #1 to that certain LETTER OF ESTABLISHMENT by and between AllianceOne Receivables Management Inc. ("ARMI"), a Delaware corporation, with its principal place of business at 4850 E. Street Road, Suite 300, Trevose, PA 19053 and Pierce County ("Client") is executed to be effective the __ day of April, 2017.

WHEREAS, the parties entered into a Letter of Establishment effective September 24, 2012 (the "LOE");

WHEREAS, the parties desire to enter into this Addendum #1 to the LOE;

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. ARMI agrees to comply with the Payment Card Industry Data Security Standard (PCI-DSS), Attachment A, as attached hereto and made a part hereof for all purposes.

2. Except as modified hereby, the LOE remains in full force and effect.

IN WITNESS WHEREOF, the parties have duly executed this Addendum to be effective as of the date first set forth above.

AllianceOne Receivables Management Inc.

By: _____
Harry Neerenberg
Chief Financial Officer

Date: __4/13/17__

Pierce County

By: _____

__Kevin Stock County Clerk__
Print name and title

Date: __4/20/17__

1

Attachment A
To Addendum #1

# PAYMENT CARD INDUSTRY DATA SECURITY STANDARD (PCI-DSS)

Summary:    *Pierce County departments and third party vendors will ensure payment processing is in compliance with Payment Card Industry Data Security Standards (PCI-DSS) when accepting payment by credit card, debit card, or check card. Any known or suspected data breaches must be immediately reported to the Information Technology (IT) Service Desk.*

When accepting payment by credit card, debit card, or check card, cardholder data must be safeguarded in compliance with PCI-DSS.

Each County Department that accepts card payment will:

1. Submit annual certifications to the IT Department within 30 days of renewal. The required certification includes a copy of the appropriate Payment Card Industry Self-Assessment Questionnaire and a signed Attestation of Compliance.
2. Work with the IT Department to ensure accurate information is entered into the online certification application. Assign an individual or team to establish, document, and distribute security incident response and escalation procedures for the timely and effective resolution of all breaches of cardholder data security in the department.
3. Immediately notify the IT Department of any known or suspected data breaches.
4. Ensure all employees in the department are aware of the importance of cardholder data security and to define their information security responsibilities.

Each County Department that has hired a third party vendor that accepts card payments for the County will:

1. Ensure the contract with the vendor has language requiring PCI-DSS compliance and annual submittal of certifications to the IT Department. Copies of these certifications will then be forwarded to the Budget and Finance Department.
2. Immediately notify the IT Department of any known or suspected data breaches.

Additional requirements:

1. Cardholder information must never be stored. This includes:
   a. Personal identification number (PIN) or the encrypted PIN block.
   b. Card validation code (three-digit or four-digit number printed on the card and used for card-not-present transactions).
   c. The full contents of any track from the magnetic stripe (or data chip) of the card.

2

PAYMENT CARD INDUSTRY DATA SECURITY STANDARD

2. Cardholder's 16-digit account number (Primary Account Number or PAN) must not be entered or stored in a permanent manual or electronic data file unless required for business, legal, or regulatory purposes.

   a. The PAN must be masked when displayed. The first six and last four digits are the maximum number to be displayed. (This requirement does not apply to parties with a specific need to see the full PAN.)

   b. Washington State law requires the PAN be truncated and the expiration date suppressed on all copies of printed receipts.

   c. An unencrypted PAN must never be sent by email, instant messaging, or any other electronic messaging technology.

   d. Inclusion of the full 16-digit cardholder number in a data file must be specifically authorized in writing by the Director of Budget and Finance. Written requests for authorization must be submitted by the Director of the department or agency with responsibility for the data file. The request must include:

      i. A complete list of customer related data elements to be stored; and

      ii. The reason each data element is required.

3. Requirements for safeguarding receipts, batch reports, and other documents which include PAN data are as follows:

   a. When the card payment is made in person, the customer must be given a copy of the transaction receipt.

   b. When payment is made by mail, online, or telephone, the customer copy of the receipt must be mailed to the cardholder or stored with the merchant copy, in accordance with written department policy.

   c. The merchant copy of the receipt must be stored in a secure location immediately after the transaction is completed. Receipts which display a card number must be held in a locked file and accessible to authorized personnel only.

   d. Order forms containing primary account numbers must be destroyed or stored with the merchant copy of the transaction receipt, in accordance with written department policy.

4. Reports (such as batch reports or daily transaction lists) which display primary account numbers and customer data must be physically secured in the same manner as receipts. Transfer of hardcopy files to a County records center is acceptable as the materials are safeguarded from casual access and destruction is certified at the end of the retention period.

   a. Reports with full PAN must never be sent to other County departments as supporting documentation for accounting entries.

   b. Where possible, reports must be modified to display a transaction ID number or a routing number instead of the primary account number, or to mask a portion of the number.

5. Media containing cardholder data must be stored in a strictly controlled location and destroyed when it is no longer needed.

3

PAYMENT CARD INDUSTRY DATA SECURITY STANDARD

    a. Hardcopy materials must be shredded, incinerated, or pulped at the end of the retention period
    b. Electronic media must be purged, demagnetized, or otherwise destroyed so that cardholder data cannot be reconstructed.
6. If cardholder data is shared with a service provider:
    a. A department must have a written agreement that includes an acknowledgement that the service provider is responsible for the security of cardholder data.
    b. The service provider's Payment Card Industry Data Security Standard compliance status must be monitored.
    c. Due diligence must be exercised prior to the engagement of a service provider.
    d. A list of service providers must be maintained.

This policy will be reviewed and updated at least once each year by the Pierce County Budget and Finance and IT Departments to reflect changes in the environment and in the Payment Card Industry Data Security Standards.

| | |
|---|---|
| Effective: | August 2011 |
| Revised: | August 2016 |
| References: | Payment Card Industry Data Security Standards |

*Policy previously titled Data Privacy.*

# — APPENDIX 2 —

AMENDMENT # 1

to Contract SC-106149

dated 08/31/2020

for

Extending Contract SC-106149 for collections services for District Court referrals from ending August 31st, 2020 to ending August 31st, 2021

THIS AGREEMENT is made and entered into by Pierce County (County) and Transworld Systems Inc. (Contractor)

WHEREAS, the parties have previously entered into an agreement dated September 1, 2018 through August 31, 2020 for collections services for District Court referrals,

WHEREAS, the parties desire to amend the agreement in consideration of the mutual benefits and advantages to be derived by each of the parties,

IT IS HEREBY AGREED as follows:

**Term of Agreement:** The Parties hereby agree to extend the term of the agreement pursuant to the following:

**1.1. The term of the Agreement shall be extended through and including August 31, 2021.**

All other terms and conditions of the agreement and all supplements and modifications thereto shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement, on the day and year last specified below.

CONTRACTOR:

Transworld Systems Inc.
Full Firm Name

_(Signature)_

Chief Operating Officer
Title of Signatory Authorized by Firm Bylaws

Mailing Address: 150 N. Field Drive, Suite 200

Lake Forest, IL 60045

Street Address, if different:

Federal Tax ID or Social Security Number:

94-1728881

PIERCE COUNTY:

Approved as to legal form only:

see attached
DEPUTY PROSECUTING ATTORNEY          Date

Approved:

see attached
FINANCE                                                  Date

see attached
DEPARTMENT DIRECTOR                      Date

COUNTY EXECUTIVE                             Date
($250,000 or more)

AMENDMENT # 1

to Contract SC-106149

dated  08/31/2020

for

Extending Contract SC-106149 for collections services for District Court referrals from ending August 31st, 2020 to ending August 31st, 2021

THIS AGREEMENT is made and entered into by Pierce County (County) and Transworld Systems Inc. (Contractor)

WHEREAS, the parties have previously entered into an agreement dated September 1, 2018 through August 31, 2020 for collections services for District Court referrals,

WHEREAS, the parties desire to amend the agreement in consideration of the mutual benefits and advantages to be derived by each of the parties,

IT IS HEREBY AGREED as follows:

**Term of Agreement:** The Parties hereby agree to extend the term of the agreement pursuant to the following:

**1.1. The term of the Agreement shall be extended through and including August 31, 2021.**

All other terms and conditions of the agreement and all supplements and modifications thereto shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement, on the day and year last specified below.

C O N T R A C T O R:

see attached
_____
Full Firm Name


_____
*(Signature)*


_____
Title of Signatory Authorized by Firm Bylaws

Mailing Address: _____

_____


_____
Street Address, if different:_____

_____


Federal Tax ID or Social Security Number:

_____


P I E R C E   C O U N T Y:

Approved as to legal form only:

_____
DEPUTY PROSECUTING ATTORNEY          Date
                                                                  8/10/20

Approved:

Electronic review/approval in WD on 9/2/20
_____
FINANCE                                                     Date

_____
DEPARTMENT DIRECTOR          7/27/2020
                                                            Date

_____
COUNTY EXECUTIVE                          Date
($250,000 or more)



**PERSONAL SERVICES AGREEMENT**

CONTRACT NO. **SC-106149**

Transworld Systems, Inc. , hereinafter called **Contractor**, and Pierce County, hereinafter called **County,** agree as set forth in this Agreement, including:

| | |
|---|---|
| **General Conditions** | pages 2 to 6 |
| **Exhibit A** (Scope of Work) | pages 7 to 12 |
| **Exhibit B** (Compensation) | pages 13 to 14 |
| **Exhibit C** (Contract Compliance) | pages 15 to 18 |
| **Exhibit D** (any Special Provisions) | pages 19 to 20 |

Copies of the above mentioned are attached and incorporated herein by this reference as fully as if set forth herein.

**Term of Agreement:**   September 1, 2018 through August 31, 2020, unless terminated or renewed elsewhere in the Agreement.

Maximum consideration for the initial term of this Agreement or for any renewal term shall not exceed $0.

Contractor acknowledges and by signing this contract agrees that the Indemnification provisions set forth in Paragraphs 5, 7, 13, 15, 20, and 23, are totally and fully part of this contract and have been mutually negotiated by the parties.

**IN WITNESS WHEREOF,** the parties have executed this Agreement this _6th_ day of _November_ 2018.

**CONTRACTOR:**

Transworld Systems Inc.
Name

_[signature]_
Signature

Financial
Chief ~~Revenue~~ Officer
Title of Signatory Authorized by Firm Bylaws

150 N. Field Drive, Suite 200
Mailing Address

Lake Forest, IL 60045
City, State, Zip

**PIERCE COUNTY:**

Approved as to legal form only:

_Denise Greer_                    9/13/18
Deputy Prosecuting Attorney          Date

Recommended:

_Gary Robinson_                    11/6/18
Finance                            Date

Approved:

_[signature]_                       9/11/18
Department Director                 Date

_____
Pierce County Executive ($250,000 or more)          Date

**CONTACT INFORMATION**

| | Contractor | Pierce County Department | Pierce County Purchasing Agent |
|---|---|---|---|
| Name | Transworld Systems, Inc | Misty Robison | Kenneth L. Matthews |
| Title | Chief ~~Revenue~~ Finance Officer | Court Administrator | Purchasing Agent |
| Phone | ~~832-727-5160~~ 847-969-7976 | 253-798-7753 | 253-798-7456 |
| Cell | | | |
| Fax | David Zwick | 253-798-7603 | 253-798-6699 |
| Email | ~~Tom.klein~~@tsico.com | | kmatthe@co.pierce.wa.us |
| Address | 150 N. Field Drive, Suite 200 Lake Forest, IL 60045 | 930 Tacoma Ave S, Rm 239 Tacoma, WA  98402 | 950 Fawcett Ave, Suite 100 Tacoma, WA 98402 |

Contractor Name: Transworld Systems, Inc. _____                    · Contract No.

## GENERAL CONDITIONS

1.  Scope of Contractor's Services:
    The Contractor agrees to provide to the County services and any materials set forth in the project narrative identified as Exhibit "A" during the Agreement period.  No material, labor, or facilities will be furnished by the County, unless otherwise provided for in the Agreement.

2.  Accounting and Payment for Contractor Services:
    Payment to the Contractor for services rendered under this Agreement shall be as set forth in Exhibit "B."  Where Exhibit "B" requires payments by Pierce County, payment shall be based upon billings, supported unless otherwise provided in Exhibit "B," by documentation of units of work actually performed and amounts earned, including where appropriate, the actual number of days worked each month, total number of hours for the month, and the total dollar payment requested.  Unless specifically stated in Exhibit "B" or approved in writing in advance by the official executing this Agreement for Pierce County, (hereinafter referred to as the "Contracting Officer",) the County will not reimburse the Contractor for any costs or expenses incurred by the Contractor in the performance of this contract.  ·

    Where required, the County shall, upon receipt of appropriate documentation, compensate the Contractor, no more often than monthly, through the County voucher system for the Contractor's service pursuant to the fee schedule set forth in Exhibit "B."

3.  Assignment and Subcontracting:
    No portion of this contract may be assigned or subcontracted to any other individual, firm or entity without the express and prior written approval of the Contracting Officer.

4.  Labor Standards and Contract Assistance:
    · The Contractor shall comply with the provisions of Exhibit "C", attached hereto, titled "Contract Compliance For  · Professional, Technical, Supply or Services".

5.  Independent Contractor:
    The Contractor's services shall be furnished by the Contractor as an independent Contractor and nothing herein contained shall be construed to create a relationship of employer-employee or master-servant, but all payments made hereunder and all services performed shall be made and performed pursuant to this Agreement by the Contractor as an independent Contractor.

    The Contractor acknowledges that the entire compensation for this Agreement is specified in Exhibit "B" and the Contractor is not entitled to any County benefits including, but not limited to:  vacation pay, holiday pay, sick leave pay, medical, dental, or other insurance benefits, or any other rights or privileges afforded to Pierce County employees.  The Contractor represents that he/she/it maintains a separate place of business, serves clients other than the County, will report all income and expense accrued under this contract to the Internal Revenue Service, and has a tax account with the State of Washington Department of Revenue for payment of all sales and use and Business and Occupation taxes collected by the State of Washington.

    Contractor will defend, indemnify and hold harmless the County, its officers, agents or employees from any loss or expense, including but not limited to settlements, judgments, setoffs, attorneys' fees or costs incurred by reason of claims or demands because of breach of the provisions of this paragraph.

6.  No Guarantee of Employment:
    The performance of all or part of this contract by the Contractor shall not operate to vest any employment rights whatsoever and shall not be deemed to guarantee any employment of the Contractor or any employee of the Contractor or any subcontractor or any employee of any subcontractor by the County at the present time or in the future.

7.  Taxes:
    The Contractor understands and acknowledges that the County will not withhold Federal or State income taxes.  Where required by State or Federal law, the Contractor authorizes the County to make withholding for any taxes other than income taxes (i.e., Medicare).  All compensation received by the Contractor will be reported to the Internal Revenue Service at the end of the calendar year in accordance with the applicable IRS regulations.  It is the responsibility of the Contractor to make the necessary estimated tax payments throughout the year, if any, and the Contractor is solely liable . for any tax obligation arising from the Contractor's performance of this Agreement.  The Contractor hereby agrees to indemnify the County against any demand to pay taxes arising from the Contractor's failure to pay taxes on compensation earned pursuant to this Agreement.

Contractor Name: Transworld Systems, Inc.                                    Contract No.

The County will pay sales and use taxes imposed on goods or services acquired hereunder as required by law. The Contractor must pay all other taxes including, but not limited to: Business and Occupation Tax, taxes based on the Contractor's gross or net income, or personal property to which the County does not hold title. The County is exempt from Federal Excise Tax.

8.  Regulations and Requirement:
This Agreement shall be subject to all laws, rules, and regulations of the United States of America, the State of Washington, and political subdivisions of the State of Washington, and to any other provisions set forth in Exhibit "D."

9.  Right to Review:
This contract is subject to review by any Federal or State auditor. The County or its designee shall have the right to review and monitor the financial and service components of this program by whatever means are deemed expedient by the Contracting Officer. Such review may occur with or without notice, and may include, but is not limited to, on site inspection by County agents or employees, inspection of all records or other materials which the County deems pertinent to the Agreement and its performance, and any and all communications with or evaluations by service recipients under this Agreement. The Contractor shall preserve and maintain all financial records and records relating to the performance of work under this Agreement for 3 years after contract termination, and shall make them available for such review, within Pierce County, State of Washington, upon request.

10. Modifications:
Either party may request changes in the Agreement. Any and all agreed modifications shall be in writing, signed by each of the parties.

11. Termination for Default:
If the Contractor defaults by failing to perform any of the obligations of the contract or becomes insolvent or is declared bankrupt or commits any act of bankruptcy or insolvency or makes an assignment for the benefit of creditors, the County may, by depositing written notice to the Contractor in the U.S. mail, postage prepaid, terminate the contract, and at the County's option, obtain performance of the work elsewhere. If the contract is terminated for default, the Contractor shall not be entitled to receive any further payments under the contract until all work called for has been fully performed. Any extra cost or damage to the County resulting from such default(s) shall be deducted from any money due or coming due to the Contractor. The Contractor shall bear any extra expenses incurred by the County in completing the work, including all increased costs for completing the work, and all damage sustained, or which may be sustained by the County by reason of such default.

If a notice of termination for default has been issued and it is later determined for any reason that the Contractor was not in default, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to the Termination for Public Convenience paragraph hereof.

12. Termination for Public Convenience:
The County may terminate the contract in whole or in part whenever the County determines, in its sole discretion, that such termination is in the interests of the County. Whenever the contract is terminated in accordance with this paragraph, the Contractor shall be entitled to payment for actual work performed at unit contract prices for completed items of work. An equitable adjustment in the contract price for partially completed items of work will be made, but such adjustment shall not include provision for loss of anticipated profit on deleted or uncompleted work. Termination of this contract by the County at any time during the term, whether for default or convenience, shall not constitute a breach of contract by the County.

13. Defense & Indemnity Agreement:
The Contractor agrees to defend, indemnify and save harmless the County, its appointed and elected officers and employees, from and against all loss or expense, including but not limited to judgments, settlements, attorney's fees and costs by reason of any and all claims and demands upon the County, its elected or appointed officials or employees for damages because of personal or bodily injury, including death at any time resulting therefrom, sustained by any person or persons, and for damages to property including loss of use thereof, whether such injury to persons or damage to property is due to the negligence of the Contractor, his/her Subcontractors, its successor or assigns, or its or their agent, servants, or employees, the County, its appointed or elected officers, employees or their agents, except only such injury or damage as shall have been occasioned by the sole negligence of the County, its appointed or elected officials or employees.

Contractor Name: Transworld Systems, Inc.                                                    Contract No.

The preceding paragraph is valid and enforceable only to the extent of the Contractor's negligence where the damages arise out of services or work in connection with or collateral to, a contract or agreement relative to construction, alteration, repair, addition to, subtraction from, improvement to, or maintenance of, any building, highway, road, railroad, excavation, or other structure, project, development, or improvement attached to real estate, including moving and demolition in connection therewith, a contract or agreement for architectural, landscape architectural, engineering, or land surveying services, or a motor carrier transportation contract and where the damages are caused by or result from the concurrent negligence of (i) the County or its agents or employees, and (ii) the Contractor or the Contractor's agents or employees."

14. Insurance Requirements
The insurance coverages specified in this paragraph (14.) are required unless modified by Attachment A of this agreement. If insurance requirements are contained in Attachment A they take precedence

The Contractor shall, at the Contractor's own expense, maintain, with an insurance carrier authorized or eligible under RCW Chapter 48.15 to do business in the State of Washington, with minimum coverage as outlined below, commercial automobile liability insurance, and either commercial general liability insurance, or, if any services required by the contract must be performed by persons authorized by the State of Washington, professional liability insurance:  .

| Commercial Automobile Liability | Bodily Injury Liability and Property Damage Liability Insurance $1,000,000 each occurrence OR combined single limit coverage of $2,000,000, with not greater than a $1000.00 deductible. |
|---|---|
| Commercial General Liability | Bodily Injury Liability and Property Damage Liability Insurance $1,000,000 each occurrence OR combined single limit coverage of $2,000,000, with not greater than a $1000.00 deductible. |
| Professional Liability Insurance | Shall include errors and omissions insurance providing $1,000,000.00 coverage for all liability which may be incurred during the life of this contract. |

Pierce County shall be named as an additional insured on all required policies except professional liability insurance, and such insurance as is carried by the Contractor shall be primary over any insurance carried by Pierce County.  The Contractor shall provide a certificate of insurance to be approved by the County Risk Manager prior to contract execution, which shall be attached to the contract.

Such insurance policies or related certificates of insurance shall name the Pierce County as an additional insured on all general liability, automobile liability, and excess policies.  The Contractor may comply with these insurance requirements through a program of self insurance that meets or exceeds these minimum limits.  The Contractor must provide Pierce County with adequate documentation of self insurance prior to performing any work related to this contract and treat the County as an insured under the indemnity agreement.  Should the Contractor no longer benefit from a program of self-insurance, the Contractor agrees to promptly obtain insurance as provided above.   A forty-five (45) Calendar Day written notice shall be given to prior to termination of or any material change to the policy(ies) as it relates to this Agreement.

Pierce County shall have no obligation to report occurrences unless a claim is filed with the Pierce County Auditor; nor shall Pierce County have an obligation to pay premiums.

In the event of nonrenewal or cancellation of or material change in the coverage required, thirty (30) days written notice will be furnished by Contractor to Pierce County prior to the date of cancellation, change or nonrenewal, such notice to be sent to the Pierce County Risk Manager, 955 Tacoma Ave South, Suite 303, Tacoma, WA  98402."

15. Industrial Insurance Waiver
With respect to the performance of this Agreement and as to claims against the County, its officers, agents and employees, the Contractor expressly waives its immunity under Title 51 of the Revised Code of Washington, the Industrial Insurance Act, for injuries to its employees and agrees that the obligations to indemnify, defend and hold harmless provided in this Agreement extend to any claim brought by or on behalf of any employee of the Contractor. This waiver is mutually negotiated by the parties to this Agreement.

16. Venue and Choice of Law:
In the event that any litigation should arise concerning the construction or interpretation of any of the terms of this Agreement, the venue of such action of litigation shall be in the courts of the State of Washington in and for the County of Pierce.  This Agreement shall be governed by the law of the State of Washington.

Contractor Name: Transworld Systems, Inc.                                          Contract No.

17. Withholding Payment:
In the event the Contracting Officer determines that the Contractor has failed to perform any obligation under this Agreement within the times set forth in this Agreement, then the County may withhold from amounts otherwise due and payable to Contractor the amount determined by the County as necessary to cure the default, until the Contracting Officer determines that such failure to perform has been cured. Withholding under this clause shall not be deemed a breach entitling Contractor to termination or damages, provided that the County promptly gives notice in writing to the Contractor of the nature of the default or failure to perform, and in no case more than 10 days after it determines to withhold amounts otherwise due. A determination of the Contracting Officer set forth in a notice to the Contractor of the action required and /or the amount required to cure any alleged failure to perform shall be deemed conclusive, except to the extent that the Contractor acts within the times and in strict accord with the provisions of the Disputes clause of this Agreement. The County may act in accordance with any determination of the Contracting Officer which has become conclusive under this clause, without prejudice to any other remedy under the Agreement, to take all or any of the following actions: (1) cure any failure or default, (2) to pay any amount so required to be paid and to charge the same to the account of the Contractor, (3) to set off any amount so paid or incurred from amounts due or to become due the Contractor. In the event the Contractor obtains relief upon a claim under the Disputes clause, no penalty or damages shall accrue to Contractor by reason of good faith withholding by the County under this clause.

18. Future Non-Allocation of Funds:
Notwithstanding any other terms of this Agreement, if sufficient funds are not appropriated or allocated for payment under this contract for any future fiscal period, the County will not be obligated to make payment for services or amounts after the end of the fiscal period through which funds have been appropriated and allocated, unless authorized by county ordinance. No penalty or expense shall accrue to the County in the event this provision applies.

19. Contractor Commitments, Warranties and Representations:
Any written commitment received from the Contractor concerning this Agreement shall be binding upon the Contractor, unless otherwise specifically provided herein with reference to this paragraph. Failure of the Contractor to fulfill such a commitment shall render the Contractor liable for damages to the County. A commitment includes, but is not limited to any representation made prior to execution of this Agreement, whether or not incorporated elsewhere herein by reference, as to performance of services or equipment, prices or options for future acquisition to remain in effect for a fixed period, or warranties.

20. Patent/Copyright Infringement:
Contractor will defend and indemnify the County from any claimed action, cause or demand brought against the County, to the extent such action is based on the claim that information supplied by the Contractor infringes any patent or copyright. The Contractor will pay those costs and damages attributable to any such claims that are finally awarded against the County in any action. Such defense and payments are conditioned upon the following:

a. That Contractor shall be notified promptly in writing by County of any notice of such claim.
b. Contractor shall have the right, hereunder, at its option and expense, to obtain for the County the right to continue using the information, in the event such claim of infringement, is made, provided no reduction in performance or loss results to the County.

21. Disputes
a. General
Differences between the Contractor and the County, arising under and by virtue of the Contract Documents shall be brought to the attention of the County at the earliest possible time in order that such matters may be settled or other appropriate action promptly taken. Except for such objections as are made of record in the manner hereinafter specified and within the time limits stated, the records, orders, rulings, instructions, and decisions of the Contracting Officer, shall be final and conclusive.

b. Notice of Potential Claims
The Contractor shall not be entitled to additional compensation which otherwise may be payable, or to extension of time for (1) any act or failure to act by the Contracting Officer or the County, or (2) the happening of any event or occurrence, unless the Contractor has given the County a written Notice of Potential Claim within 10 days of the commencement of the act, failure, or event giving rise to the claim, and before final payment by the County. The written Notice of Potential Claim shall set forth the reasons for which the Contractor believes additional compensation or extension of time is due, the nature of the cost involved, and insofar as possible, the amount of the potential claim. Contractor shall keep full and complete daily records of the Work performed, labor and material used, and all costs and additional time claimed to be additional.

Contractor Name: Transworld Systems, Inc.                               Contract No.

c.  Detailed Claim
The Contractor shall not be entitled to claim any such additional compensation, or extension of time, unless within 30 days of the accomplishment of the portion of the work from which the claim arose, and before final payment by the County, the Contractor has given the County a detailed written statement of each element of cost or other compensation requested and of all elements of additional time required, and copies of any supporting documents evidencing the amount or the extension of time claimed to be due.

22.  Ownership of Items Produced
All writings, programs, data, public records or other materials prepared by the Contractor and/or its consultants or subcontractors, in connection with the performance of this Agreement shall be the sole and absolute property of the County.

23.  Confidentiality:
The Contractor, its employees, subcontractors, and their employees shall maintain the confidentiality of all information provided by the County or acquired by the Contractor in performance of this Agreement, except upon the prior written consent of the Pierce County Prosecuting Attorney or an order entered by a court after having acquired jurisdiction over the County.  Contractor shall immediately give to the County notice of any judicial proceeding seeking disclosure of such information.  Contractor shall indemnify and hold harmless the County, its officials, agents or employees from all loss or expense, including, but not limited to settlements, judgments, setoffs, attorneys' fees and costs resulting from Contractor's breach of this provision.

24.  Notice:
Except as set forth elsewhere in the Agreement, for all purposes under this Agreement, except service of process, notice shall be given by the Contractor to the department head of the department for whom services are rendered, and to the County Purchasing Agent, 615 S. 9th, Tacoma, WA 98405-4673.  Notice to the Contractor for all purposes under this Agreement shall be given to the address reflected below. Notice may be given by delivery or by depositing in the US Mail, first class, postage prepaid.

25.  Severability:
If any term or condition of this contract or the application thereof to any person(s) or circumstances is held invalid, such invalidity shall not affect other terms, conditions or applications which can be given effect without the invalid term, condition or application.  To this end, the terms and conditions of this contract are declared severable.

26.  Waiver:
Waiver of any breach or condition of this contract shall not be deemed a waiver of any prior or subsequent breach.  No term or condition of this contract shall be held to be waived, modified or deleted except by an instrument, in writing, signed by the parties hereto.

27.  Waiver of Non Competition:
Contractor irrevocably waives any existing rights which it may have, by contract or otherwise, to require another person or corporation to refrain from submitting a proposal to or performing work or providing supplies to Pierce County, and Contractor further promises that it will not in the future, directly or indirectly, induce or solicit any person or corporation to refrain from submitting a bid or proposal to or from performing work or providing supplies to Pierce County.

28.  Survival:
The provisions of paragraphs 5, 7, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 25, 26, and 28, and the provisions of any non-collusion affidavit required by paragraph 4, shall survive, notwithstanding the termination or invalidity of this Agreement for any reason.

29.  Entire Agreement:  This written contract represents the entire Agreement between the parties and supersedes any prior oral statements, discussions or understandings between the parties.

30.  Cooperative Purchasing. The Washington State Interlocal Cooperative Act RCW 39.34 provides that other governmental agencies may purchase goods and services on this solicitation or contract in accordance with the terms and prices indicated therein if all parties are willing.  The Contract maximum for this contract per annual term, or for any renewal period, is for Pierce County's use only.  Other agencies may use this contract up to their contract limits, if any, exclusive of and in addition to the County's contract maximum. By ordering and providing service under terms of this contract to any other governmental agency or jurisdiction, the governmental agency and the Agency agree to indemnify, defend and hold harmless Pierce County and District Court from any and all obligations, claims, or expenses, including attorney's fees, arising out of such action.

Contractor Name: Transworld Systems, Inc.                          Contract No.

# EXHIBIT "A"
## (SCOPE OF WORK)

1. **Account Maintenance**

   1.1. <u>Referrals.</u> The Court may refer judgments for unpaid infractions, traffic and non-traffic criminal cases, current and legacy (open infraction and criminal cases) and other judgments payable to Pierce County. Cases with an amount due of $10 or less will not be referred to the Contractor. Upon referral, the Contractor will collect judgments referred and will first receive collection fees as they are collected, including interest, which are imposed in the judgment docket and according the Revised Code of Washington State. The Contractor shall have the collection fees set forth in section 2.1 added to judgments not so providing. Payment received directly by the Court within ten (10) days after referral, which satisfies the judgment in full, will not be subject to any collection fee.

   <u>The contractor will pursue all cases referred, including those having out-of- state addresses.</u>

   1.2. <u>Acknowledgment of Referral.</u> An acknowledgment report of cases referred by the Court will be prepared and submitted daily to the Court. Separate reports will be generated for criminal, infraction and other cases.

   1.3. <u>Preparation and Maintenance of Database.</u> At its own expense the Contractor will establish, input data, and maintain a database for the Court concerning each account referred, which will account for each judgment including costs, interest, payments; and provide balances for judgment, interest, and collection fees. All balances and payment history will be maintained and segregated according to case number. The Contractor will at its own expense prepare and maintain software for the Court to electronically transmit data to the Contractor for new referrals, for recalls, for amendments to judgment imposed by the Court, for electronic transmission by the Contractor to the Court for all changes to the database, for reports, and for transmission of funds required by this Agreement. The electronic format of transmittal data will be determined by the Court.

   1.4. <u>Documentation of Contacts.</u> All contact by the Contractor with the judgment debtor shall be documented.

   1.5. <u>Recall by Court.</u> The Court may recall an account or reduce/amend the amount due on any case at any time. Recalled accounts will not be subject to collection fees. Collection fees for reduced/amended accounts will be based upon the reduced/amended balance.

   1.6. <u>Uncollectible Accounts.</u> Uncollectible accounts shall be returned to the Court with a record of efforts to collect and reasons why the account is deemed uncollectible.

   1.7. <u>Hold/Frozen /Suspense Accounts.</u> Contractor shall place no account in a hold/frozen/suspended status without notification to court

   1.8. <u>Collection Efforts.</u>

      1.8.1. Unless the Court determines that recall is required, the Contractor shall proceed with placement to an attorney who has been approved by the Court's Prosecuting Attorney for non-payment by the defendant after repeated contact attempts by the Contractor. Prior to proceeding with legal action, the Contractor shall request approval, where non-exempt assets or income warrant under generally accepted industry standard, on a case-by-case basis, from the Court. The Court will review the garnishment request and if appropriate, grant approval to proceed with the garnishment action. The minimum contact shall be either: (1) mail to the last known address or telephone call with the defendant; or (2) in person.

      1.8.2. The Court shall approve verbiage in standard correspondence and telephone scripts of the Contractor. Representatives of the Contractor shall at all times conduct themselves in accordance with applicable laws and regulations. Contractor shall, at its own cost, implement and retain a Compliance Program for consumer complaints. Contractor shall outline to the Court, the components of such program for Court approval. Upon Court's request, Contractor shall provide a report on compliance standards every six (6) months.

   1.9. <u>Adjudication of FTAs.</u> The Court will adjudicate with the Department of Licensing any Failure to Appear (FTA)

Contractor Name: Transworld Systems, Inc.             Contract No.

upon payment in full of the Court account or upon execution of payment agreement between Contractor and Defendant. The Contractor shall inform the judgment debtor, when an account is paid in full or a payment agreement is entered into, that they may contact the Court in person, by phone or online for adjudication.

1.10. Reduction Policies. The Contractor shall inform judgment debtors how they may learn about reduction polices which have been adopted by the Court. Judgment debtors under judgments which include penalties for mandatory insurance offenses shall be informed of the Court's applicable reduction policies.

1.11. Error Correction. The Contractor shall notify the Court within one (1) judicial business day of discovery of any errors or problems with respect to (1) collection notices and other collection efforts made upon the judgments referred by the Court, and (2) the information contained in the computer databases maintained by the Contractor. The Contractor shall correct all such errors and problems within 72 hours unless mutual agreement provides a different time.

1.12. Verification of Records. Not more frequently than every six months, the Contractor will, upon request by the Court, run a comparison of the account records of the Contractor with data provided by the Court from its computer system. The Contractor will verify the integrity and consistency of account information and will report to the Court in a format authorized by the Court any discrepancies and suggested corrections, at its expense. The Contractor will also provide the programming expertise and human resources required to implement synchronization of the records to correct data.

2. **Fees and Costs**

2.1. Collection Fees. Uniform collection fees of 15.25% will be applied to all categories of accounts. However, in the event the Contractor forwards a judgment to an approved attorney the collection fee the Contractor is entitled to will be thirty percent (30%). Contractor may request adjustments to the collection fee that are reasonable and provide for an equitable profit margin. The reasonableness of the collection fees will be determined by comparison with rates assessed to other court accounts via existing contracts and in compliance with state and federal law. If an adjustment is requested, the Contractor is required to submit a specific and separate quote for the Contractor fee for the Court's review prior to implementation. Any change in rates must be pre-approved by the court by written amendment to this Agreement.

2.2. Interest. For all accounts other than pre-collection accounts placed with Contractor, interest shall accrue at the statutory rate on judgments and shall be charged pursuant to statutory authority on accounts as provided by law. The Contractor shall maintain electronic records of all transactions affecting interest and the balance of accrued interest, and shall provide those records to the Court upon request and upon recall, in addition to required reports. Interest shall be charged on accounts from the date of referral pursuant to statutory authority. The Court shall receive all interest collected.

2.3. Pre-Collection Letter. - The Contractor shall assume the expense for the 30-day pre-collection letter, including postage, envelopes, stuffing, paper, preprinted form, etc. This letter shall be compatible with existing computer generated data of the Court.

2.4. Annual Mailing. The Contractor will at its own expense mail one special purpose letter per year to each judgment debtor if requested by the Court, in addition to any other letters required by this Agreement.

2.5. Electronic Transmission & Access. The Contractor will provide, at its own expense, through networking in a format acceptable to the Court, immediate and direct access by Court personnel to account activity and status on the Contractor's system on all referred accounts.

3. **Pre-Collection**

The Contractor shall produce and mail a pre-collection letter meeting any applicable legal requirements informing the judgment debtor that the judgment will be referred to the Contractor for collection on the 30th day after mailing of the letter, and if the judgment is not paid in full, that the judgment will bear interest thereafter at the rate set forth in the letter, and that collection fees payable under agreements between the Court and collectors will be added to the judgment. Text of pre-collection letters shall be approved by the Court. These accounts will be referred to the Contractor with a pre-collect status code. The Contractor shall assume the expense for the 30-day pre-collection letter, including postage, envelopes, stuffing, paper, preprinted form, etc. This letter shall be compatible with computer generated data of the Court.

Contractor Name: Transworld Systems, Inc.                                    Contract No.

    a.  If the account referred has previously accrued interest while in a collection status with another vendor, the Contractor shall, in lieu of a pre-collection letter, send a notice to the judgment debtor which recites the transfer of judgment to the Contractor for collection, and sets forth the balances of principal and interest already due, together with a recitation of any provisions of the judgment which add a collection fee.

    b.  To the extent practicable, aggregate into a single pre-collection letter all obligations owed by a judgment debtor.

    c.  Return to the Court all pre-collection letters and responses where the response indicates that the addressee disputes the facts stated in the pre-collection letter.

    d.  Utilize the address service of the United States Post Office on all pre-collection letter mailings.  The Court shall be notified of any addresses reported through this service.

    e.  Use generally accepted industry standards to locate debtors, including but not limited to skip-tracing, credit bureau notification, national database address searches, and post and base locator services for military personnel.

## 4.  Payments

    4.1.  <u>Application of Payments-Normal</u>.  All payments received will be first applied to taxable costs added by the Court through legal collection action, provided that no taxable costs will be added to judgments which are not satisfied by the execution, garnishment, attachment or supplemental proceeding concerning which the costs were incurred.  The net proceeds, after deduction of any such taxable costs, will be divided between the Court and the Contractor. The amounts received by the Contractor hereunder shall be the Contractor's sole compensation, and shall not be disbursed to the Contractor for its benefit until the amounts due the Court have been remitted to the Court with instructions showing the allocation thereof to interest and/or principal on the judgment, and showing the complete payment received and portions to be retained by the Contractor.  The Court's share of all payments received by the Contractor shall be applied first to interest, then to principal.

In each of the following examples the Contractor fee pursuant to paragraph 2.1 is 15.25%, other than Example 3 where the fee is 30%.

Example 1:
If payment of $100.00 is received on 6/1/2018 on a judgment of $670, entered 1/1/2018 and referred to collection on 4/1/2018 following a 30 day letter, applications would be as follows:

| Payment Rcvd. By Contractor | Interest Payable to Court | Judgment Payable to Court | Fee Payable to Contractor | Balance on Judgment | Interest Balance on Judgment |
|---|---|---|---|---|---|
| $100.00 | $13.44 | $71.31 | $15.25 | $598.69 | 0 |

Example 2:
If a subsequent payment of $10 is received on the same judgment on 8/1/2018, application would be as follows:

| Payment Rcvd. By Contractor | Interest Payable To Court | Judgment Payable to Court | Fee Payable to Contractor | Balance on Judgment | Interest Balance on Judgment |
|---|---|---|---|---|---|
| $10 | $8.47 | $0 | $1.53 | $598.69 | $3.53 |

Example 3 – Legal Action Account Fee (30%):
If a subsequent payment of $500 is received on the same judgment on 10/2/2018, as a result of Contractor placing such judgment with a law firm and such law firm securing a garnishment judgment entered on 10/2/2018, application would be as follows:

| Payment Rcvd. By Contractor | Interest Payable to | Judgment Payable to | Fee Payable to | Balance on Judgment | Interest Balance On |
|---|---|---|---|---|---|

Contractor Name: Transworld Systems, Inc.                               Contract No.

| | Court | Court | Contractor | | Judgment |
|---|---|---|---|---|---|
| $500 | $15.73 | $112.37 | $154.90 | $486.32 | $0 |

4.2. Application of Payments-Multiple Cases. Payments received from a judgment debtor who is a judgment debtor on multiple judgments referred to the Contractor shall be applied to the oldest judgment first, absent express written direction of the judgment debtor to the contrary. The Contractor agrees to apply payments received from defendants having judgments from different courts participating in a protocol among District and Municipal Courts of the State of Washington for relicensing adjudication of defendants, in accordance with the protocol, absent binding directions from the defendant to the contrary.

4.3. Unidentified Cases. If funds are received by the Court with no case number and a case exists with the Court that has not been referred to the Contractor, the Court may apply the funds to the non-Contractor case.

4.4. NSF Checks. The Contractor may request reimbursement for the portion of NSF checks received by the Contractor in payment of judgment which have been remitted to the Court. The Court will refund to the Contractor the portion of any unpaid NSF check remitted to the Court, which is so reported, within thirty (30) days of receiving a completed request and will correct the Court records as specified, unless the Court, upon notice and an opportunity for the Contractor to be heard, finds the report erroneous. The Contractor will defend and hold harmless the Court, its agents and employees from any claim, cost or expense, including attorney's fees, incurred as a result of an inaccurate report and certification, or correction of records requested thereby. No request under this paragraph shall be honored which is not submitted within 30 days after original receipt by the Contractor of the NSF check.

4.5. Payment Methods. Contractor shall accept cash, check, money order and credit/debit card (Visa/MasterCard) as methods of payments. Any costs for such services is the sole responsibility of the Contractor. Contractor shall, at its own cost, establish and maintain a web-based payment system for use by defendants.

5. Remittances

5.1. Daily Transmittal to Court. The Contractor shall remit to the Court on the next business day all funds received that apply to unpaid Court accounts, except that the Contractor need not remit the portion of payment necessary to satisfy cost added to judgment by the Court incurred by the Contractor, and the collection fee, if any, to be retained by the Contractor hereunder.

5.2. Reporting Requirements. The Contractor shall provide the Court with a report to accompany the daily transmittal which shall include the judgment debtor's name, case number, total amount paid, amount remitted to the Court, the distribution of the payment between costs added to judgment by the Court incurred by the Contractor, commission collected by the Contractor, judgment interest and judgment principal payable to the Court, principal balance and interest balance. This report shall be sorted as determined by the Court and shall be in the form and format determined by the Court. This report shall not include any adjustments, charge backs or corrections. The maximum number of cases included in one transmittal from the Contractor to the Court shall be set by mutual agreement.

5.3. Adjustments. Adjustments, charge backs or corrections authorized by this Agreement will be reported separately, and requests authorized must be in writing and accompanied by supporting documents. Contractor shall notify the court of such adjustments initiated by the Contractor within two (2) business days of adjustment in Contractor database. Adjustments, charge backs or corrections requested by the Court shall be processed within ten (10) business days of original request. Except for amounts earned as provided herein by the Contractor for judgments actually collected and paid to the Court, no payment shall be made nor any sum withheld by the Contractor for any reason.

5.4. Monthly Time Payment Services and Fees. Contractor shall propose pricing for implementation of a monthly time payment program for court clientele with outstanding fines that are not in collection status. The Court is under no obligation participate in any such proposed program but may, at its sole discretion, invoke implementation of this program with 60 days notice to the Contractor.

6. Reporting

Contractor Name: Transworld Systems, Inc.                                   Contract No.

6.1. The Contractor shall provide the Court with management reports on a regularly scheduled basis. The Contractor shall develop and amend the format and information contained in reports at the request of the Court. The Court may establish a schedule by which requested management reports will be provided on a regularly scheduled basis.

6.2. The Contractor shall provide the Court with monthly reports, including but not limited to: (1) aged summary of funds received, (2) outstanding accounts, (3) funds received by case by year, (4) other reports upon mutual agreement. Criminal and infraction cases must be segregated; interest and principal payments must be reported separately. The Contractor shall amend the format and information contained in reports at the request of the Court.

## 7. Bankruptcy, Garnishments, Legal Suits

For all accounts referred, the Court shall have received a judgment in favor of the Court, and Contractor shall be responsible for initiating court-approved legal action in any bankruptcy, and filing garnishments and supplemental proceedings, and if necessary, approved on a case-by-case basis. The attorney selected to perform the legal work for the Court through the Contractor must be approved in advance by the Court's Prosecuting Attorney.

7.1. Bankruptcy. The Contractor shall process bankruptcy claims on behalf of the Court for those accounts listed with them. The Contractor shall notify the Court of the claim by forwarding a copy of the Proof of Claim or the Notice of Filing. The Contractor shall notify the Court upon receiving a letter of dismissal or discharge from the bankruptcy court and forward a copy of each letter to the Court. Bankruptcy procedures may be modified at the sole discretion of the Court and by written notification to the Contractor.

7.2. Garnishments. The Contractor shall attempt to garnish, after all collection efforts have been exhausted and with the Court's prior written approval, to collect referred judgments. Amounts collected shall be applied as set forth in paragraph 4. The Contractor shall be responsible for invoicing court costs associated with any legal proceeding to the Court on a weekly basis for reimbursement of expended court costs by the Contractor. The Court reserves the right to cancel or to remove any case from garnishment and collections activity without compensation of legal fees upon judicial discretion.

## 8. Local Office

8.1. Local Office. The Contractor shall maintain an official office within a five (5) mile radius of the County City Building to facilitate the collection process for the judgment debtors and the Court. The Contractor will open the local office immediately, and the office shall be fully functional not later than four (4) months after execution. The Contractor may also be required to locate a maximum of two (2) staff in the County-City Building, at the courts' discretion.

8.2. Local Phone. The Contractor shall maintain a local phone number in Pierce County or a toll free number to facilitate the collection process for the defendants and the Court.

## 9. Auditing

9.1. Court Audit. The Contractor shall permit the Court, its designees, and any Contractor entitled or authorized to audit Court records, from time to time as the auditor deems necessary (including up to 6 years after expiration of the Agreement), to inspect and audit at any and all reasonable times in Pierce County, Washington, or at such other reasonable location as the auditor selects, all pertinent books and records of the Contractor and any agent or other person or entity that has performed work in connection with or related to the Contractor's services under this Agreement to verify the accuracy of accounting records including trust accounts, the Contractor's performance under this Agreement, or the Contractor's compliance with the terms and conditions of this Agreement; and shall supply the auditor with, or shall permit the auditor to make copies of any books and records and any portion thereof, upon the request of the auditor. The Contractor shall ensure that such inspection, audit and copying rights hereunder are a condition of any subcontract, agreement or other arrangement under which any other person or entity is permitted to perform work in connection with or related to the Contractor's services under this Agreement. The Contractor shall submit to on-site performance audits by the Court or its designees when desired by the Court without prior notice, either written or oral. Any exceptions will be remedied by the

Contractor Name: Transworld Systems, Inc.                                      Contract No.

Contractor within thirty (30) days from written notice to the Contractor by the Court.

9.2. <u>Outside Audit.</u>  At the Courts request, the Contractor shall contract with an independent financial accounting firm to undertake a review of the Contractor's management of the Court's collection accounts.  Such review will focus on the Contractor's financial processing of the Court's accounts or a review of the Agencies compliance with this Agreement, as directed by the Court.  Findings and reports of this review shall be made available to the Court for its review within sixty (60) days of the Court's request  Any exceptions or findings shall be remedied by the Contractor within thirty (30) days from the date of the finding, unless otherwise directed in writing by the Court. The Contractor shall bear the expense of outside audits no more frequently than once each year.

## 10. Use of Agreement by Other Jurisdictions

The Contractor agrees to provide services to other governmental agencies or jurisdictions which have entered into intergovernmental agreements with Pierce County under chapter 39.34 RCW upon the terms and conditions herein set forth, substituting the governmental party for Pierce County and District Court the applicable name, party or contract. By ordering and providing service under terms of this contract to any other governmental Contractor or jurisdiction, the governmental Contractor and the Contractor agree to indemnify, defend and hold harmless Pierce County and District Court from any and all obligations, claims, or expenses, including attorney's fees, arising out of such action.

## 11. Actions Upon Termination.

Within twenty days of termination, the Contractor shall return to the Court all outstanding judgments, files, paper and database required to be kept regarding each account referred to the Contractor, together with all relevant information concerning the status of such judgments and/or persons obligated thereon, amounts of each type due thereunder and payments made, and locations and information held by the Contractor which could help locate such persons, together with all reports required as if all accounts had been recalled.  This obligation shall continue notwithstanding any termination of this Agreement.

## 12. Legal Changes.

Contractor agrees to remain abreast of changes in any laws affecting performance of this agreement, including those referenced in paragraph 1.6.  Contractor will notify and discuss with the Court any legal changes that may impact the terms of performance set forth in this Exhibit A so the parties may determine mutually agreeable modifications, if any.

**Contractor Name: Transworld Systems Inc.**                              **Contract No.** _____

Contractor Name: <u>Transworld Systems Inc.</u> _____                    Contract No. _____

**EXHIBIT "B"**
(COMPENSATION)

The amounts identified as described in Exhibit A, section 4 shall be the Contractor's sole compensation, and shall not be disbursed to the Contractor for its benefit until the amounts due the Court have been remitted to the Court with instructions showing the allocation thereof to interest and/or principal on the judgment, and showing the complete payment received and portions to be retained by the Contractor.

Contractor Name: <u>Transworld Systems Inc.</u>               Contract No. _____

**EXHIBIT "C"**
**CONTRACT COMPLIANCE for PROFESSIONAL, TECHNICAL, SUPPLY OR SERVICES**
Revised 3/10

It is the policy of Pierce County to foster an environment that encourages economic growth and diversification, business development and retention, increases competition and reduces unemployment. In support of that policy, Pierce County reaffirms its commitment to maximize opportunities in public contracting for all contractors including minority and women owned business enterprises.

Bidders are encouraged to utilize qualified, local businesses in Pierce County and Washington State where cost effectiveness is deemed competitive. In addition, Bidders are encouraged to subcontract with firms certified by the Washington State Office of Minority and Women's Business Enterprises (MWBE).

**A. <u>MWBE DIRECTORY ASSISTANCE</u>**
A directory of MWBE firms is published quarterly by the Washington State Office of Minority and Women's Business Enterprises (OMWBE). Copies of the directory are available from the State OMWBE (360-753-9693) or may be viewed at the Public Works Department, 2702 S 42nd St Suite 201, Tacoma 98409, and the Tacoma Public Library, 1102 Tacoma Avenue South, Tacoma, 98402. Contact the Contract Compliance Office for additional information at (253) 798-7250.

**B. <u>EQUAL EMPLOYMENT OPPORTUNITY</u>:**
   1. Upon execution of this contract, the Contractor shall comply with the Equal Employment Opportunity requirements set forth below. The Contractor shall not violate any of the terms of Chapter 49.60 of the Revised Code of Washington, Title VII of the Civil Rights Act of 1964, or any other applicable federal, state, or local law or regulation regarding nondiscrimination.
   2. No person or firm employed by the Contractor shall be subject to retaliation for opposing any practice made unlawful by Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (29 U.S.C. 621 et seq.), the Equal Pay Act (29 U.S.C. 206(d), the Rehabilitation Act (29 U.S.C. 791 et seq.), the Americans with Disabilities Act of 1990, or for participating in any stage of administrative or judicial proceedings under those statutes.
   3. The Contractor shall take all reasonable steps to ensure that qualified applicants and employees shall have an equal opportunity to compete for advertised or in-house positions for employment. Applicants and employees shall be treated fairly without regard to race, color, religion, sex, age, disability, or national origin. Equitable treatment shall include, but not be limited to employment, upgrading or promotion, rates of pay increases or other forms of compensation, and selection for training or enrollment in apprenticeship programs.

**C. <u>CERTIFICATION OF NONSEGREGATED FACILITIES</u>**
The Contractor shall submit with its proposal a Certification of Nonsegregated Facilities. All requests to sublet or assign any portion of this contract, at any level, shall be accompanied by evidence of this certification in all subcontract agreements.

**D. <u>E-VERIFY DECLARATION</u>**
Pierce County requires that all businesses which contract with the County for contracts in excess of $25,000 and of duration longer than 120 days, and are not specifically exempted by PCC 2.106.022, be enrolled in the Federal E-verify Program. The requirement extends to every subcontractor meeting the same criteria. The Prime Contractor must provide certification of enrollment in the Federal E-verify program to the County. The Prime Contractor will remain enrolled in the program for the duration of the contract. The Prime Contractor is responsible for verification of every applicable subcontractor. The County reserves the right to require a copy of the Memorandum of Understanding between the Prime or any Subcontractor and the Department of Homeland Security upon request at any time during the term of the contract. Failure to provide this document could result in suspension of the project.

A copy of Ordinance 2009-74 is on the Purchasing Department's website located at <u>www.co.pierce.wa.us/cfapps/edocs/viewdocuments.cfm?did=95668&dnum</u> .

The Federal E-Verify Program is a web based application and can be accessed at <u>www.dhs.gov/everify</u> .

**E. <u>SUBMITTAL REQUIREMENTS</u>**
   1. Certificate of non-segregated facilities: Contractor shall submit with proposal, each subcontractor shall submit when work is sublet.
   2. Professional and Technical Workforce Data Form: Contractor is encouraged to submit with proposal, each Subcontractor is encouraged to submit the form when work is sublet.
   3. Subcontractors Participation Form: Check the appropriate box indicating the firm who will perform the work of the contract. Submit the completed form with the proposal documents.
   4. E-Verify Declaration: Contractor shall submit with proposal.

Contractor Name: <u>Transworld Systems Inc.</u>                                    Contract No. _____

## CERTIFICATION OF NONSEGREGATED FACILITIES

The contractor certifies that no segregated facilities are maintained and will not be maintained during the execution of this contract at any of contractor's establishments.

The contractor further certifies that none of the contractor's employees are permitted to perform their services at any location under the contractor's control during the life of this contract where segregated facilities are maintained. The contractor certifies further that he will not maintain or provide for his employees any segregated facilities at any of his establishments, and that he will not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained.

The contractor agrees that a breach of this certification is a violation of the Equal Opportunity clause in this contract. As used in this certification, the term "segregated facilities" means any waiting rooms, work area, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color or national origin, because of habit, local custom, or otherwise.

The contractor agrees that identical certifications from proposed contractors will be obtained prior to the award of any subcontracts. Contractor will retain a copy of any subcontractor's certification and will send original to Contract Compliance Division.

## NON-COLLUSION & DEBARMENT AFFIDAVIT

State of Washington, County of <u>Pierce</u>

As an authorized representative of the firm of <u>Transworld Systems Inc.</u>, I do hereby certify that said person(s), firm, association or corporation has (have) not, either directly or indirectly, entered into any agreement, participated in any collusion, or otherwise taken any action in restraint of free competitive bidding in connection with the project for which this proposal is submitted.

I further certify that, except as noted below, the firm, association or corporation or any person in a controlling capacity associated therewith or any position involving the administration of federal funds; is not currently under suspension, debarment, voluntary exclusion, or determination of eligibility by any federal agency; has not been suspended, debarred, voluntarily excluded or determined ineligible by any federal agency within the past 3 years; does not have a proposed debarment pending; and has not been indicted, convicted or had a civil judgment rendered against said person, firm, association or corporation by a court of competent jurisdiction in any matter involving fraud or official misconduct within the past 3 years.

I further acknowledge that by signing the signature page of the proposal, I am deemed to have signed and have agreed to the provisions of this affidavit.

Note:    Exceptions will not necessarily result in denial of award, but will be considered in determining bidder responsibility. For any exception noted, indicate above to whom it applies, initiating agency, and dates of action. Providing false information may result in criminal prosecution or administrative sanctions.

"A suspending or debarring official may grant an exception permitting a debarred, suspended, or excluded person to participate in a particular transaction upon a written determination by such official stating the reason(s) for deviating from the Presidential policy established by Executive Order 12549..." (49CFR Part 29 Section 29.215)

The undersigned hereby agrees to pay labor not less than the prevailing rates of wages in accordance with the requirements of the special provisions for this project.

BY: _Ashly Durham_          DATE: <u>July 19, 2018</u>

TITLE: _Client Service Supervisor_

Contractor Name: Transworld Systems Inc.                    Contract No. _____

**SUBCONTRACTORS PARTICIPATION FORM FOR PROFESSIONAL, TECHNICAL, SUPPLY OR SERVICE PSAS**

Check appropriate statement below:

✓ **Our firm will perform all contracted scope of work tasks.**

☐ **Our firm will subcontract a portion of** the work tasks. The following firms were contacted and will be utilized in the performance of the work as indicated below.

List all potential subcontracting firms. Do not mark "N/A" unless the Bidder will perform all work or provide all supplies or services for this contract.

| Firm Name/Address/Phone | Work Item(s) Solicited | Proposal Amount | Awarded? (yes/no) |
|---|---|---|---|
| N/A | | | |
| | | | |
| | | | |
| | | | |

1. List full name, address, and phone number of each firm listed to be utilized.

2. List specific work to be accomplished, supplies to be furnished and the amount proposed for each subcontract.

3. Contact the Pierce County Contract Compliance Officer at (253) 798-7250 if you have questions.

BY: _Ashly Durham_           DATE: _7/19/18_

TITLE: _Client Service Supervisor_   PHONE: _253-627-8065_

Revised (6/99)

Contractor Name: <u>Transworld Systems Inc.</u>                        Contract No. _____

## PERSONNEL WORKFORCE DATA FORM

FIRM NAME    Transworld Systems Inc. – Including TSI US, TSI Puerto Rico and University Accounting Services

ADDRESS    500 Virginia Drive, Suite 514

CITY, STATE, ZIP    Fort Washington, Pennsylvania 19034

PHONE    800-331-8019

PROJECT    Collection Services, Pierce County

PROJECT #

CONTRACT WORK HOURS (if applicable)    N/A

TYPE OF SERVICE PROVIDED    Collection Services

CONTRACTORS AGGREGATE WORK FORCE – if you need additional space, photo copy this section and attach it to this form.

| OCCUPATION | TOTAL EMPLOYED | | TOTAL MINORITY | | NATIVE AMERCIAN | | ASIAN | | BLACK | | HISPANIC | | 2 or more, none listed or Nat. HW/Pac.Isl. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | M | F | M | F | M | F | M | F | M | F | M | F | M | F |
| Management | 91 | 84 | 10 | 18 | 0 | 1 | 0 | 0 | 4 | 12 | 1 | 2 | 5 | 3 |
| Professionals | 38 | 42 | 4 | 9 | 0 | 0 | 0 | 3 | 1 | 3 | 2 | 2 | 1 | 1 |
| Technicians | 5 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Administrative | 204 | 562 | 98 | 301 | 0 | 3 | 4 | 6 | 64 | 228 | 11 | 27 | 19 | 37 |
| Other | 4 | 9 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| TOTALS | 342 | 699 | 114 | 319 | 0 | 4 | 4 | 9 | 70 | 244 | 14 | 31 | 26 | 41 |

Contractor Name: <u>Transworld Systems Inc.</u>                                    Contract No. _____

**EXHIBIT D**
**SPECIAL PROVISIONS**

# — APPENDIX  3 —



**Pierce County**

**Office of the County Clerk**

930 Tacoma Avenue South, Room 110
Tacoma, Washington 98402-2177
(253) 798-7455 • FAX (253) 798-3428

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

December 01 2010 9:06 AM

KEVIN STOCK
Clerk of the Superior Court and
Director of Arbitration
KEVIN STOCK
COUNTY CLERK

EDDIE LEE LEMMON
12915 47TH AVE SW #8
LAKEWOOD, WA 98499

December 1, 2010

**NOTICE**

Case No.: 10-1-00961-4
Judgment Date: October 8, 2010
Judgment Amount : $900.00
Outstanding Balance: $900.00

Dear Sir/Madam,

The approval of ESSB 5990 has give the Superior Court Clerk's Office the responsibility of collecting Legal Financial Obligations (LFO's).  As a condition of the Judgment and Sentence in this matter the Pierce County Superior Court permitted you to make payments on your LFO's for court costs, fines and/or restitution.

[✓]  According to our records you have failed to comply with this condition of your Judgment and Sentence and are now delinquent on your LFO payments.

[ ]  According to our records you have made monthly payments and are in compliance with your Judgment and Sentence.  However, it is now necessary for you to make new payment arrangements with the Clerk's Office.

**Within 30 days from the date of this notice you must pay the outstanding balance due or make new arrangements for payment with this office.  If you do not respond to this notice within the 30 days we will turn this case over to our Commercial Collection Agent.  As of that time you will be required to deal ONLY with the collection agent regarding payments.**

This notice is a one time courtesy that is being extended by the Superior Court Clerk's Office in an effort to assist you in meeting your Court ordered obligations.  For the collection of unpaid legal financial obligations, the clerk may impose an annual fee, pursuant to RCW 9.94A.780.

Sincerely,
KEVIN STOCK
Clerk of the Superior Court

By ___JL_____
        Collections Division
        (253) 798-6368

