1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDDIE LEE LEMMON,

              Plaintiff,

      v.

PIERCE COUNTY,

              Defendant.

NO. C21-5390RSL

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS

     This matter comes before the Court on "Pierce County's FRCP 12(b)(6) Motion to

Dismiss." Dkt. # 3.[1] Plaintiff alleges that Pierce County has an unconstitutional practice of

imposing excessive punishment - in the form of additional fines, fees, and interest - on indigent

people for failure to pay court-ordered legal financial obligations ("LFOs"). Pierce County seeks

dismissal of the claims asserted against it, arguing that (a) plaintiff lacks standing and/or his

individual claims are not ripe, (b) the action is an impermissible collateral attack on plaintiff's

criminal judgment and sentence, (c) the State of Washington, rather than Pierce County, controls

the conduct of which plaintiff complains and is therefore the proper defendant, (d) plaintiff has

not adequately alleged a § 1983 claim, (e) plaintiff's state constitutional claim fails for the same

---

[1] A redacted version of the motion is available at Dkt. # 7 for public viewing.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 1

reasons as his § 1983 claim, and (f) neither declaratory nor injunctive relief are available in the circumstances presented here.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).[2]

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to

---

[2] Plaintiff has not objected to the Court's consideration of the state court records attached to defendant's motion.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 2

state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010).

**A. Standing and Ripeness**

Article III of the United States Constitution expressly limits federal judicial power to "cases or controversies," a concept designed to ensure that the judicial power is used "to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst*., 555 U.S. 488, 492 (2009). Standing "is an essential and unchanging part of the case-or-controversy requirement" and requires that the plaintiff have suffered an "injury in fact" caused by defendant's conduct which would likely be redressed by a ruling in plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "injury in fact," the only element of the standing analysis at issue here, is defined as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted).

Plaintiff alleges that defendant punished him with excessive fines and other charges for failing to pay LFOs and that it did so without adequate notice, without an opportunity to be heard, and without making constitutionally required findings. He alleges that his LFO account, including the additional fines imposed by defendant, has been sent to a collection agency which has continued its efforts to collect on behalf of defendant. In the context of a motion to dismiss, these allegations are accepted as true. There is no indication that Pierce County has waived any portion of the outstanding LFO balance, and it is uncontested that the County sent plaintiff's accounts for collection. It asserts, however, that the collection agency has not taken any concrete

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 3

steps to collect on the debt and that plaintiff has not made any payments thereon.

To the extent plaintiff is asserting a due process claim based on the government's failure to follow the procedures set forth in *Bearden v. Georgia*, 461 U.S. 660 (1983), he "must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003) (citation omitted). The procedures at issue here - notice and a hearing at which the government inquires about the reasons for a failure to pay - are designed to keep the state from meting out punishment, with its concomitant deprivation of life, liberty, or property, for indigency. *Bearden*, 461 U.S. at 673. Plaintiff adequately alleges that the deprivation of the procedures set forth in *Bearden* led to the automatic imposition of additional LFOs under Pierce County's policy, without any of the necessary procedural safeguards, and that he was thereby punished based solely on his inability to pay. "Standing may properly hinge on this type of injury." *Citizens for Better Forestry*, 341 F.3d at 971.

Pierce County argues that the government's imposition of a fine or debt on an indigent plaintiff, standing alone, is not an injury-in-fact and will not become an injury-in-fact until steps are taken to collect the debt. In the context of the imposition of financial obligations as part of a judgment and sentence, *Bearden* made clear that "[a] defendant's poverty in no way immunizes him from punishment. . . . '[N]othing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law.'" 461 U.S. at 669-70 (quoting *Williams v. Illinois*, 399 U.S. 235, 243 (1970)). An indigent defendant may, after all, subsequently acquire the means to discharge his LFOs or the state could ultimately release him from the liability. In those circumstances, there would be no chance of unconstitutional

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 4

punishment for poverty or indigence. Thus, a defendant "may assert a constitutional objection on the ground of his indigency only if the government seeks to enforce the court's order for costs at a time when the defendant is unable, through no fault of his own, to comply." *U.S. v. Hutchings*, 757 F.2d 11 14-15 (2d Cir. 1985) (internal quotation marks and citations omitted).[3] Defendant argues that plaintiff's concern that the debt will be enforced against him is too speculative to give rise to standing.

In the context of this case, the Court disagrees. While it is true that standing or ripeness may be a problem when criminal defendants challenge the sentencing court's imposition of LFOs before the government makes any attempt to collect, plaintiff is not challenging the $800 in fees imposed at sentencing. Rather, he alleges that Pierce County has taken steps to collect the LFOs and that, pursuant to its unconstitutional policy or practice, has imposed additional and excessive charges as punishment for failing to make timely payments. Plaintiff, as an individual, was the target of the challenged government action, namely the imposition of LFOs without notice, without necessary findings, and in amounts that are excessive. This is not a case in which a law of general application might, someday, be enforced against a particular member of the public, but rather an instance where the government, following its policies, took action directly against the complaining party. Where "the plaintiff is himself an object of" the allegedly unconstitutional deprivation of notice and the imposition of punishment and excessive fines,

---

[3] Along the same lines, defendant argues that plaintiff's claims are not ripe for adjudication. The ripeness doctrine "is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Trustees for Alaska v. Hodel*, 806 F.2d 1378, 1381 (9th Cir. 1986) (citation and internal quotation marks omitted).

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 5

exposing him to individual liability for the assessed LFOs, "there is ordinarily little question" that he has Article III standing to challenge the conduct. *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011).

**B. Collateral Attack**

The judgment and sentence entered against plaintiff by the Pierce County Superior Court in October 2010 included a finding that he "has the ability or likely future ability to pay the legal financial obligations imposed" and directed plaintiff to pay to the Clerk of Court $800.00 in various assessments and fees. Dkt. # 3 at 43-44. The court further ordered that the plaintiff "shall pay the costs of services to collect unpaid legal financial obligations per contract or statute" and that the LFOs "shall bear interest from the date of the judgment until payment in full" at 12%. Dkt. # 3 at 45. Defendant argues that plaintiff's challenge to the imposition of additional LFOs is an improper attempt to avoid, defeat, or evade the Superior Court's decree. Defendant notes that plaintiff did not appeal the judgment and sentence and has not utilized statutory options for reducing the interest or waiving costs.

Plaintiff's claims challenge Pierce County's practice of automatically imposing additional, excessive fees and interest as punishment for nonpayment when referring LFO accounts to a collections agency. While the Superior Court ordered that defendant pay the costs of services to collect unpaid LFOs, it did not order the Clerk of Court to send plaintiff's account to collections on a date certain, to impose an immediate fine that is seemingly unrelated to collection costs, or to impose punishment or excessive fines which, as a matter of procedure or substance, violate the U.S. Constitution. In reply, defendant argues that it was powerless to overrule the express finding of the Superior Court that Mr. Lemmon had the ability to pay LFOs

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 6

and therefore had neither the duty nor the authority to hold an ability-to-pay hearing. But the Superior Court found that Mr. Lemmon "has the ability or likely future ability" to pay $800 and the costs of collection. The finding is in the alternative and, given Mr. Lemmon's incarceration after sentencing, it would be pure conjecture to say that the Superior Court "found" that he had a current ability to pay or that the finding somehow barred a government agency from conducting the inquiry mandated by *Bearden* before imposing additional punishment. In the circumstances presented here, plaintiff may succeed on his claims without calling into question any provision of the 2010 judgment or sentence.

**C. Actionable Conduct by the County**

Pierce County asserts that it cannot be held liable for the imposition of fees by the County Clerk because the Clerk was acting as an agent of the State of Washington when collecting unpaid LFOs, with the Superior Court retaining jurisdiction and control until the obligations are paid in full.[4] Based on its assertions that the County lacks the ability to control judicial conduct and that the Clerk was acting as an agent of the State at all relevant times, the County argues that plaintiff has failed to allege facts showing that he is entitled to relief against the County.

Defendant does not argue that the County Clerk is not a County employee, offers no case law in support of the proposition that the County Clerk was not acting for the County with regards to the conduct at issue here, and does not deny the role the Clerk plays in the collection of LFOs.

As a matter of state law, the County Clerk has statutory authority over the collection of LFOs. *See* RCW 9.94A.760. The County Clerk's authority over LFO

---

[4] Pierce County does not address its relationship with the Pierce County District Court or its administrator.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 7

collection includes the discretion to review the appropriateness of collection schedules and to request changes to an LFO debtor's payment schedule based on changes in the debtor's financial circumstances. RCW § 9.94A.760(8)(b). When the County Clerk exercises this discretion (or, as [plaintiff] alleges, systematically declines to do so), the Clerk acts as a county official with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *see Burrowes v. Killian*, 195 Wn.2d 350, 459 P.3d 1082, 1087 (2020) (the County Clerk acts as a county policymaker except where performing ministerial, in-court functions). The record also includes evidence from which a reasonable juror could conclude that the County Clerk had a major role in designing, continuing, and ultimately ending the policy.

*Sleater v. Benton Cty.*, 812 F. App'x 470, 471-72 (9th Cir. 2020). Plaintiff alleges that the County Clerk is a County policymaker who executed agreements with a collection agency and controlled both referrals and the imposition of additional charges upon referral. Based on the relevant case law and plaintiff's allegations, the County Clerk is not only a County employee when he or she undertakes non-ministerial acts to collect LFOs, but is also a County policymaker.

The argument that the County cannot be liable for its own conduct because judicial action may also be at issue has been rejected by the Ninth Circuit. The plaintiff in *Sleater* filed a class action lawsuit on behalf of those who had been arrested pursuant to a "Pay or Appear" program administered by the County Clerk of Benton County. The Ninth Circuit found unpersuasive "the County's argument that because the authority to issue an arrest warrant lies exclusively with Superior Court judges, the County Clerk's actions here may not be imputed to the County." *Id.* at 472. Even if the County Clerk lacked the statutory power or authority to issue arrest warrants, if he or she in fact did so without reviewing an LFO debtor's ability to pay, the conduct was that of the County and would give rise to County liability. In the circumstances presented here, the

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 8

County Clerk had significant discretion in how, when, and whether to attempt to collect outstanding LFOs. Plaintiff is not alleging that the County Clerk's actions were *ultra vires*, as was the case in *Sleater*, but rather that the way in which the County Clerk exercised its discretion violated his constitutional rights. A County employee exercising his or her discretionary authority can be held liable for the consequences of his or her actions even if that conduct also relates to authority granted to the judiciary. Plaintiff has adequately alleged conduct on the part of Pierce County.

**D. 42 U.S.C. § 1983 claim**

    **1. Municipal Liability**

        Municipalities and other local government units are 'persons' that can be sued directly under § 1983 for monetary, declaratory, and injunctive relief when their conduct causes the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). A County is subject to liability based on the actions or omissions of county officials who have "final policymaking authority" and are responsible under state law for making policy in that area of the County's business. *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). A County can be held liable for acts it has directly ordered, as well as those it has ratified. *Id.*[5]

---

[5] Defendant insists that plaintiff must allege that the County policymaker was deliberately indifferent to his constitutional rights in order to state a claim of municipal liability. That is not the case. In order to hold a municipality liable, a plaintiff must show not just that a municipal employee violated his or her constitutional rights, but also that the action or inaction was taken pursuant to official municipal policy. *Monell*, 436 U.S., at 691 and 694. Where the acts of policymaking officials are at issue, as is alleged in this case, the municipality can be held responsible for those acts. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Where the constitutional violation is the result of an alleged failure to train, however, the municipality's culpability for the resulting harm is at its most tenuous, and the Supreme Court requires a showing that the failure to train amounts to deliberate indifference to the rights

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 9

Pierce County argues that it cannot be held liable for the alleged constitutional violations of the County Clerk because the doctrine of *respondeat superior* does not apply to § 1983 claims. Plaintiff is not attempting to hold Pierce County liable because its employee violated his constitutional rights, but because Pierce County itself, through its policymakers, imposed additional fees as punishment without inquiring into the reasons for nonpayment. The Ninth Circuit recently found that County Clerks have final policymaking authority for the County when exercising their discretionary authority over LFO collection efforts. *Sleater*, 812 Fed. App'x at 471.[6] Thus, plaintiff has adequately alleged that the County itself, through the acts of its policymakers, caused his injuries.

### 2. Deprivation of Federal Constitutional Rights

#### a. Fourteenth Amendment

Pierce County asserts that merely referring unpaid LFOs to a collection agency is neither a deprivation of life, liberty, or property nor the denial of the equal protection of the laws. Plaintiff's claim, however, is not based on the existence of the penal liability imposed at sentencing or its referral for collection. Rather, plaintiff alleges that the County imposed additional punishment - in the form of automatic fines, fees, or interest - when he failed to make

---

of persons with whom the untrained employees come into contact. *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, at 388 (1979). This is not a failure to train case, and plaintiff has adequately alleged that the final policymaker of Pierce County deprived him of his constitutional rights.

[6] Defendant's argument that the County Clerk was not acting as a policymaker because he or she was simply following the directions of the Superior Court is unpersuasive. As discussed in the previous section, the Superior Court did not order the County Clerk to send plaintiff's account to collections on a date certain, to impose an immediate fine that is seemingly unrelated to collection costs, or to impose punishment or excessive fines that violate the U.S. Constitution. The County Clerk had significant discretion in how, when, and whether to attempt to collect plaintiff's outstanding LFOs, and his or her exercise of that discretion was not a ministerial act.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 10

payments without inquiring as to the reasons for the nonpayment, essentially punishing indigence. Pierce County recognizes that constitutional objections arise when LFOs are "enforced at a time when the defendant was unable, through no fault of his own, to comply" (Dkt. # 3 at 17 (quoting *U.S. v. Brown*, 744 F.2d 905, 911 (2nd Cir. 1984))), but simply ignores the allegation that the County Clerk imposed additional LFOs on plaintiff at the time of referral despite his inability to pay. For purposes of this motion, plaintiff has adequately alleged a due process violation.[7]

With regards to plaintiff's equal protection claim, Pierce County argues that plaintiff has failed to make even a threadbare recital of the elements of such a claim, namely that the County "(1) intentionally (2) treated plaintiff differently that other similarly situated [sentenced offenders], (3) without a rational basis." *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citations omitted). The Court is inclined to agree, but the defect does not appear to be fatal under controlling Supreme Court precedent. In *Bearden*, the Supreme Court granted *certiorari* to resolve a circuit conflict as to whether revocation of probation for failure to pay a fine violated the Equal Protection Clause. The Court noted that where the treatment of indigents in our criminal justice system is at issue, "[d]ue process and equal protection principles converge in the Court's analysis." 461 U.S. at 664-65.

> There is no doubt that the State has treated the petitioner differently from a person who did not fail to pay the imposed fine . . . . To determine whether this differential treatment violates the Equal Protection Clause, one must determine whether, and under what circumstances, a defendant's indigent status may be

---

[7] Whether the additional financial obligations are the type of sanctions for nonpayment that raise constitutional issues has not been squarely addressed by the parties and has not been resolved in the context of this motion.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 11

considered in the decision to revoke probation. This is substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the state to revoke probation when an indigent is unable to pay. Whether analyzed in terms of equal protection or due process, the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose . . . ."

*Id.* at 666-67 (quoting *Williams*, 399 U.S. at 260). While the *Bearden* Court clearly favored the due process approach (*Id.* at 666 n. 8), it acknowledged that it was not writing on a clean slate and that many of the Supreme Court's decisions in this area rest on an equal protection framework (*Id.* at 665 and 667). The Court declines to dismiss the equal protection claim where the state has allegedly made wealth-based classifications that impact the equality of persons in our judicial system. Case law applying both the Due Process and the Equal Protection Clauses will guide the analysis of whether the Fourteenth Amendment precludes a state from punishing an indigent defendant solely because of his lack of financial resources.

Pierce County also relies on *U.S. v. Loucks*, 149 F.3d 1048, 1050 (9th Cir. 1998), for the proposition that where plaintiff has failed to take advantage of alternative procedures, other than payment of the LFOs, to satisfy his penal obligations, any negative consequences of the continuing existence of the LFOs "is not due solely to his indigency." In *Loucks*, the defendant was convicted of lying about his criminal history in order to purchase a firearm. He appealed the conviction, arguing that the State of Washington should have *sua sponte* waived his LFOs because he was unable to pay them and, had it done so, his civil rights would have been restored and the predicate felony would have been expunged. The Ninth Circuit affirmed the conviction,

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 12

finding that the defendant "made no effort to pursue Washington's alternatives to payment of his LFO" and had therefore "not shown sufficient concern to seek restoration of his civil rights." *Id.* at 1050. Prior Ninth Circuit case law had already determined that, if an offender fails to follow the specified procedures to obtain the restoration of his or her civil rights, the underlying conviction may properly be treated as a predicate offense. *U.S. v. Simpson*, 27 F.3d 355, 357 (9th Cir. 1994).

It is entirely possible that, when a County Clerk evaluates whether a sentenced offender has made "sufficient bona fide efforts" to pay the LFOs, he or she may find that the offender's failure to petition the sentencing court for remission of all or part of the LFOs, as authorized under Washington law, is an indication that the nonpayment was willful. In the circumstances presented here, however, the County Clerk did not conduct an inquiry of any sort: it is that failure that forms the basis of plaintiff's claims. Had the Clerk followed the *Bearden* procedures before imposing additional fees, he or she would have found that Mr. Lemmon was incarcerated and would have been in a position to evaluate not only his financial status, but also whether he was aware of and capable of pursuing other avenues of avoiding the LFOs. Even if the Court were to overlook the procedural irregularities of which plaintiff complains, it declines to make factual findings regarding willfulness in the context of this motion to dismiss.

### b. Eighth Amendment

The Eighth Amendment's prohibition on excessive fines applies to both civil and criminal penalties and "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019).

The Supreme Court has held that a fine is unconstitutionally excessive under the

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 13

Eighth Amendment if its amount "is grossly disproportional to the gravity of the defendant's offense." *U.S. v. Bajakajian*, 524 U.S. 321, 336-37 (1998). To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense. *See U.S. v. $100,348 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004) (enunciating the "*Bajakajian* factors"). While these factors have been adopted and refined by subsequent case law in this circuit, *Bajakajian* itself "does not mandate the consideration of any rigid set of factors." *U.S. v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003).

*Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020).

Plaintiff alleges that Pierce County imposed a punitive fine of $100 on him for the offense of failing to make payments on his LFOs for two months immediately following sentencing. Plaintiff alleges that he did not pay his LFOs because he lacked the financial resources to do so, that Pierce County did not consider either his culpability in failing to pay or the availability of other penalties before imposing the fine, and that the fine is disproportionate when the offense of nonpayment is due to economic circumstances beyond plaintiff's control. Whether the Excessive Fines Clause analysis incorporates a separate means-testing requirement remains an open question (*see Bajakajian*, 524 U.S. at 340 n.15; *Pimentel*, 974 F.3d at 924-25), but where punishment is meted out for a failure to pay, the violator's ability to pay is an inherent part of the culpability analysis under the first *Bajakajian* factor (*Pimentel*, 974 F.3d at 922). Given his allegations and the lack of any information regarding Pierce County's justification for imposing a fine in the amount of $100 at the time of referral, plaintiff has raised a colorable Eighth Amendment claim.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS  - 14

**E. State Constitutional Claims**

The parties agree that the due process, equal protection, and excessive fines clauses of the Washington State Constitution are coextensive with the related clauses of the U.S. Constitution. Because plaintiff has adequately alleged constitutional claims under federal law, the corresponding state law claims may proceed.

**F. Declaratory and Injunctive Relief**

In his prayer for relief, plaintiff requests (a) a declaration that Pierce County's automatic assessment of excessive fines and interest without notice and an inquiry regarding the reasons for the nonpayment violates both the federal and state constitutions and (b) an injunction against the imposition of future unconstitutional charges, against the enforcement of unconstitutional charges that have already been imposed, and requiring the withdrawal of all accounts from the collection agencies unless the *Bearden* analysis were properly performed. At least some of this relief would inure to plaintiff's individual benefit, particularly the declaration of unconstitutional conduct and the removal of charges from his LFO balance. The equitable claims may proceed.

For all of the foregoing reasons, defendant's motion to dismiss (Dkt. # 3) is DENIED.

Dated this 18th day of August, 2021.

*Mrt S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS - 15